**The CHIEPPO BUS COMPANY, Plaintiff,**

v.

**The UNITED STATES of America and the Interstate Commerce Commission, Defendants,**

and

**Greyhound Lines, Inc. (East), and the Arrow Line, Inc., Intervening Defendants,**

and

**National Bus Traffic Association, Inc., Intervening Defendant.**

**Civ. No. 15740.**

United States District Court, D. Connecticut.

Nov. 5, 1974.

Walter W. Walsh, New Haven, Conn.,
Mary E. Kelley, Medford, Mass., and

Harold P. Boss, Washington, D. C., for plaintiff.

Thomas E. Kauper, Asst. Atty. Gen., Antitrust Div., Dept. of Justice, John H. D. Wigger, Atty., Dept. of Justice, Washington, D. C., Peter C. Dorsey, U. S. Atty., D.Conn., Peter Mear, Asst. U. S. Atty., Fritz R. Kahn, Gen. Counsel, Interstate Commerce Commission, and Seymour Glanzer, Atty., ICC, Washington, D. C., for defendants.

William E. Glynn, Day, Berry & Howard, Hartford, Conn., and Drew L. Carraway, Rice, Carpenter & Carraway, Washington, D. C., for intervening defendant National Bus Traffic Ass'n, Inc.

William E. Glynn, Day, Berry & Howard, Hartford, Conn., and L. C. Major, Jr., Major, Sage & King, Alexandria, Va., for intervening defendants Greyhound Lines, Inc. (East) and The Arrow Line, Inc.

Before SMITH, Circuit Judge, and BLUMENFELD and NEWMAN, District Judges.

## MEMORANDUM OF DECISION

J. JOSEPH SMITH, Circuit Judge:

The Chieppo Bus Company (Chieppo) invokes the jurisdiction of this three-judge court under 28 U.S.C. § 2325 to set aside, insofar as adverse to Chieppo, the action taken by the Interstate Commerce Commission (ICC) on Chieppo's alternative petitions for modification of an existing certificate of operations and issuance of a supplemental one. 117 M. C.C. 358 (1972). We find substantial evidence to support the Commission's decision to deny modification and to grant operational authority by a new certificate more circumscribed than requested and we dismiss the action to set aside the orders.

Chieppo operates a bus line out of Connecticut to ten Northeastern states and the District of Columbia under a special operations certificate issued by the ICC in 1947.[1] The service contemplated by this certificate is basically the carriage of passengers and their baggage on round-trip tours. To be distinguished are certificates for charter service—rental of the vehicle's use to a group already organized—and regular route authority—transportation of passengers and baggage at scheduled times over fixed routes between carrier-maintained terminal facilities. Since 1963, Chieppo has taken horse-racing fans from Connecticut to various tracks located outside the state; the buses leave Connecticut and return to the state on the same day. The petitions now under review constitute an attempt by Chieppo to legitimize the continuation and proliferation of its track operations[2] as conforming to (1) the terms of the 1947 certificate, or (2) a requested supple-

---

1. Chieppo's operating rights gave it authority to transport:
   Passengers and their baggage, in special operations in all-expense, round-trip sightseeing, or pleasure tours, over irregular routes, beginning and ending at New Haven, Hartford, and Southington, Conn., and extending to points in Maine, New Hampshire, Vermont, Massachusetts, Rhode Island, New York, New Jersey, Pennsylvania, Delaware, Maryland, and the District of Columbia, with no pickup or discharge of passengers or baggage en route.
   117 M.C.C. at 361.

2. As summarized by Commissioner Murphy, the operations for which authority is sought include:
   [T]he transportation, over irregular routes, of passengers and their baggage in the same vehicle with passengers, in special, round trip operations, beginning and ending at New Haven, Hartford, Southington, and Danbury, Conn., and extending to Pownal, Vt.; Pawtucket and Lincoln, R.I.; Saratoga Springs, N.Y.; and points in New York on, south, and east of a line extending from the New Jersey-New York State line at Sloatsburg, N.Y., through Nyack and Tarrytown, N.Y., to the New York-Connecticut State line, "restricted to the transportation of passengers who at the time are traveling for the purpose of attending or participating in sporting events (including racetracks), theatres, shows, parks, beaches, and like places or events; transportation in each instance to a point at or near the site of the place or event, and return."
   117 M.C.C. at 359.

mental certificate drawn to enforce the original intent of the Commission in awarding the 1947 certificate.

The Commission rejected Chieppo's construction of the 1947 certificate but did authorize certain of its trips by a new certificate. On appeal, Chieppo challenges both holdings, the first in full and the second insofar as it fails to grant it the entire authority requested. With regard to the former, Chieppo principally differs with the Commission's application of an appropriate legal standard. Secondarily, it alleges: that a denial of its due process right to "fair warning" inheres in the application of this general standard not set forth in concrete form by rule-making; that this standard's application necessarily involves activity outside the ICC's jurisdiction; and that the Commission failed to justify its resolution of the standard's applicability with findings and conclusions in sufficient detail to satisfy the Administrative Procedure Act. Chieppo predicates its attack on the ICC's circumscribed grant of authority pursuant to the second petition on an intent-enforcing theory.

## I. AUTHORITY UNDER THE 1947 CERTIFICATE

### A. Application of the *Bingler* Rule

■ In construing a special operations certificate, the ICC is sensitive to potential encroachments by a special operations carrier on the business of regular route carriers.[3] The latter must meet Commission requirements regarding schedules and terminal maintenance that force operating expenses above those of special operations carriers in general. Accordingly, the Commission readjusts the competitive balance between the two types of carriers by in effect awarding, and guarding jealously, a monopoly to the regular route carriers for expeditious travel on their assigned routes.

Difficulties arise when a special operations carrier offers services sharing features of expeditious and tour travel. Chieppo's racetrack operations fall into this gray area: on the one hand, the buses take speedy, non-stop routes with no effort to furnish sightseeing opportunities; on the other hand, Chieppo offers additional services including free parking at one of the Connecticut departure points, an optional package deal (including transportation, and track admissions tokens at cost), and box lunches or refreshments (the cost of which is added into the base fare). In dealing with similarly ambiguous operations by a special certificate holder—specifically, one-day round-trip operations to beaches and racetracks (with an admissions ticket included in the racetrack package)— the ICC laid down the general standard which controls this case: The special operations carrier must provide "something substantial in addition to, or different from, bare' expeditious transportation between two points." *Asbury Park-New York Transit Corp. v. Bingler Vacation Tours, Inc.*, 62 M.C.C. 731, 745 (1954). A three-judge district court approved this substantiality test, *Bingler Vacation Tours, Inc. v. United States*, 132 F.Supp. 793 (D.N.J.), aff'd mem., 350 U.S. 921, 76 S.Ct. 211, 100 L.Ed. 806 (1955). The Commission has decided on a case-by-case basis whether the requisite "something extra and something substantial," *Asbury Park-New York Transit Corp. v. Bingler Vacation Tours, Inc., supra*, 62 M.C.C. 731 at 745, in fact exists.

In the case currently under review, the ICC found that Chieppo offered additional services too insubstantial to overcome the expeditious character of its point-to-point service to the racetracks. The Commission emphasized that the *Bingler* test calls 'for services "that are not merely provided but also 'charged for,'" 117 M.C.C. at 372–73—an emphasis in keeping with the role of a higher

---

3. Opposing Chieppo in the ICC proceedings were: National Bus Traffic Association, Inc.; The Arrow Line, Inc.; Greyhound Lines, Inc.; The Short Line, Inc.; Trailways of New England, Inc.; and Connecticut-New York Airport Bus, Inc.

price for tour than expeditious travel in maintaining the competitiveness of regular route carriers. Thus, neither Chieppo's *optional* package, its occasional provision of admissions passes to the tracks and programs at no charge, nor its limited free parking facilities materially contributes toward the "something extra" required by *Bingler*. The refreshments and box lunches are more nearly the type of extras contemplated by *Bingler*. The Commission was not persuaded, however, that the presence of this charged-for service made the tour aspect of the trip predominate.[4]

In its briefs, Chieppo extensively recites cases in which the ICC found that extras similar to those offered by Chieppo—though in different contexts and combinations—met the *Bingler* minimum. The Commission addressed at length the relevance of various of these cases with commendable lucidity, 117 M.C.C. at 375–77, and we see no purpose in pursuing further such case-by-case analysis. At best the appellant has proved that the Commission was not compelled by its earlier holdings to deny Chieppo's modification petition in full. This is a far cry, however, from the proof of arbitrariness required before this court will overturn the Commission's considered judgment of the competing factors involved. *See,* Corn Products Refining Co. v. Federal Trade Commission, 324 U.S. 726, 738–739, 65 S.Ct. 961, 89 L.Ed. 1320 (1945). Although we do not attach a presumption of correctness to the decisions of administrative agencies on questions of law, deference to the experience and expertise of such adjudicatory bodies requires that the agency be given wide latitude in finding the facts and applying to them the appropriate legal standard. National Labor Relations Board v. Marcus Trucking Co., 286 F.2d 583, 590–592 (2d Cir. 1961). Our role is at an end, therefore, when we are satisfied that the Commission has acquitted these fact-finding and -applying functions in a manner supported by substantial evidence in the record as a whole. Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951); 5 U.S.C. § 706.[5]

We concur in the Commission's holding that Chieppo failed to provide the "something extra and something substantial" needed under *Bingler* and thus violated its special operations certificate by its racetrack operations.

### B. Related Claims

In a somewhat inscrutable attack, Chieppo appears to allege that the ICC is, as a matter of "fair warning," *cf.,* McBoyle v. United States, 283 U.S. 25, 27, 51 S.Ct. 340, 75 L.Ed. 816 (1931), obligated to elucidate the *Bingler* standard in greater detail by rule-

---

4. Provision for meals is a recognized service regularly provided by tour passenger carriers, and Chieppo's practice of furnishing refreshments to its passengers distinguishes its operations somewhat from those of regular-route operators. The additional cost appears to be small, however, and mere refreshments or box lunches are involved rather than complete meals such as are normally associated with tour services. While the passengers appreciate petitioner's practice of supplying some food, it is clear from the record that, in importance to them, Chieppo's provision of refreshments or lunches is subordinate to their prime interest in obtaining expedited point-to-point transportation over the fastest and best routes. 117 M.C.C. at 373.

5. The Commission minimized Chieppo's claim that its activities avoid the *Bingler* rule because Chieppo was not, at the time of application, competing with regular route carriers for the racetrack business. 117 M.C.C. at 374–75. Although this element of no competition was not present in *Bingler*, that decision did not depend on the presence of destructive competition. Furthermore, it is particularly dubious that the ICC intended to confer the suggested carte blanche on special operations carriers to usurp routes not traveled to date by regular route carriers: A contrary inference arises from the solicitude shown by the Commission to offer the consumer, wherever possible, two types of bus service from which to choose.

making. But an agency may proceed by rule-making or ad hoc adjudication so long as both choices are reasonable, Securities and Exchange Commission v. Chenery Corp., 332 U.S. 194, 202–203, 67 S.Ct. 1575, 1760, 91 L.Ed. 1995 (1947), and the ICC has chosen case-by-case decision in this instance after well-reasoned consideration of the options, Passenger Transportation in Special Operations, 112 M.C.C. 160 (1970). The accumulated case law may substitute for rules, therefore, and Chieppo does not suffer a deprivation of due processs merely because it cannot forecast with certainty the bare minimum in extras needed to satisfy the Commission.

■ Chieppo also alleges that the ICC cannot, consistent with its jurisdiction, require "something extra" in the way of non-transportation services as a condition to permission to render transportation services. Accepting this contention would undermine the considerable body of precedent flowing from *Bingler*. The importance of this question, therefore, particularly counsels against its resolution in a case in which it is not properly before the court: Chieppo failed to raise this issue before the Commission. Since the contention is not that the agency lacked jurisdiction to act, *cf.*, Manual Enterprises, Inc. v. Day, 370 U.S. 478, 499 n. 5, 82 S.Ct. 1432, 8 L.Ed.2d 639 (1962) (plurality opinion of Brennan, *J.*); United States v. L. A. Tucker Truck Lines, Inc., 344 U.S. 33, 38, 73 S.Ct. 67, 97 L.Ed. 54 (1952), but rather only that the administrative body took into account a variable which may render its order reversible, we refrain from expressing a view on the independent force of this argument. *See,* Cotherman v. Federal Trade Commission, 417 F.2d 587, 590–594 (5th Cir. 1969).

■ Finally, the appellant's charge that the Commission has denied it due process by inadequately stating its findings and conclusions is without foundation. In requiring agencies acting in an adjudicatory capacity to state their "findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record," Administrative Procedure Act § 8(b), 5 U.S.C. § 557(c), establishes the predicate for meaningful judicial review. *Cf.*, Secretary of Agriculture v. United States, 347 U.S. 645, 654, 74 S.Ct. 826, 98 L.Ed. 1015 (1954). But so long as "the path which it [the agency] followed can be discerned" and this statement is not "so vague and obscure as to make the judicial review contemplated by the Act a perfunctory process," reversal of the agency order is inappropriate. Colorado Interstate Gas Co. v. Federal Power Commission, 324 U.S. 581, 595, 65 S.Ct. 829, 836, 89 L.Ed. 1206 (1945). *See also,* Minneapolis & St. Louis Ry. v. United States, 361 U.S. 173, 192–194, 80 S.Ct. 229, 4 L.Ed.2d 223 (1959); United States v. Pierce Auto Freight Lines, Inc., 327 U.S. 515, 531–533, 66 S.Ct. 687, 90 L.Ed. 821 (1946); Note, Administrative Findings under Section 8(b), 51 Va.L.Rev. 459 (1965). We find the Commission's statement of findings and conclusions more than adequate to illuminate its basis for decision for purposes of judicial review.

The Commission's denial of Chieppo's modification petition does not violate the appellant's due process rights to fair warning of prohibited activity and to a statement of findings and conclusions upon which judicial review may meaningfully proceed. Nor may the order be successfully impugned for consideration of an allegedly irrelevant variable, for appellant failed to argue this defect to the Commission and it is not of the type which this court may recognize on appeal when proper procedure before the agency has not been observed.

## II. SCOPE OF THE SUPPLEMENTAL CERTIFICATE

■ In deciding whether or not to issue a certificate of operations and the appropriate scope of a certificate

awarded, the ICC is guided by its assessment of "public convenience and necessity." 49 U.S.C. § 306(a)(1). Typically, the Commission will take public testimony to determine the viability of an application in terms of this standard. Where operations have been conducted in good faith in the mistaken belief that authority is held, however, the Commission may dispense with, or at least not base its decision upon, this public proof. Equitable considerations may counsel that the applicant's activities under "color of right" are evidence of public convenience and necessity. *See,* Bowman Transportation, Inc. v. United States, 211 F.Supp. 354 (N.D.Ala.1962) (three-judge court). In the instant proceeding, the Commission accepted this color of right theory as a basis for partial relief to Chieppo.[6] In allowing Chieppo to run certain routes and disallowing it from servicing others, the ICC properly distinguished between those operations with an established presence and those either not underway or conducted only sporadically.

■ Chieppo does not directly challenge these findings but, instead, contends for plenary relief on the basis of its view of the informing intent of the 1947 certificate. The appellant thus appears to concede that it has received the full benefit of a color of right theory. It turns as a potential source for additional operating authority, however, to a tack which we may not indulge: Since the language of the certificate is not itself ambiguous, we have no occasion to inquire into the Commission's intent in awarding the certificate. Nelson, Inc. v. United States, 355 U.S. 554, 557–558 n. 3, 78 S.Ct. 496, 2 L.Ed.2d 484 (1958); Sims Motor Transport Lines, Inc., Revocation of Certificate, 66 M.C.C. 553, 556 (1956), aff'd sub nom. Sims Motor Transport Lines, Inc. v. United States, 183 F.Supp. 113, 117–118 (N.D. Ill.1959) (three-judge court), aff'd mem., 362 U.S. 637, 80 S.Ct. 1076, 4 L. Ed.2d 1019 (1960).[7]

The Commission throughout applied the correct legal standards to Chieppo's two applications. Its denial of one application and grant of only partial relief as concerns the other is neither arbitrary nor unsupported by substantial evidence.

The action to set aside the orders is dismissed.

So ordered.

---

6. Thus, the Commission found that:
[T]he present and future public convenience and necessity require operation by applicant, in interstate or foreign commerce, as a common carrier by motor vehicle, over irregular routes, of passengers and their baggage, when moving in the same vehicle with passengers, in special round trip operations (a) beginning and ending at New Haven, Conn., and extending to Yonkers Raceway, Yonkers, N.Y., Roosevelt Raceway, Westbury, N.Y., and Green Mountain Racing Park, Pownal, Vt., and (b) beginning and ending at Danbury, Conn., and extending to New York, N.Y., Belmont Park, Elmont, N.Y., Roosevelt Raceway, Westbury, N.Y., Saratoga Race Track, Saratoga Springs, N.Y., Yonkers Raceway, Yonkers, N.Y., Lincoln Downs Race Track, Lincoln, R.I., Narragansett Park Race Track, Pawtucket, R.I., and Green Mountain Racing Park, Pownal, Vt.

• • •

117 M.C.C. at 381–82.

7. The Commission rejected this intent-enforcing theory as a basis for *modifying* the 1947 certificate. 117 M.C.C. at 378.