**SELLERSBURG STONE COMPANY,**
Petitioner,

v.

**FEDERAL MINE SAFETY AND HEALTH REVIEW COMMISSION, Secretary of Labor, and Mine Safety and Health Administration, (MSHA),** Respondents.

No. 83–1630.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 7, 1984.

Decided June 11, 1984.[*]

Rehearing Denied July 24, 1984.

---

* This opinion has been circulated among all judges of this court in regular active service. A majority did not favor a rehearing *en banc* on the question of conflicting with *Allied Products Co. v. FMSHRC*, 666 F.2d 890 (5th Cir.1982).

**1148**

Edwin S. Sedwick, Sedwick & Sedwick, Sellersburg, Ind., for petitioner.

Anna L. Wolgast, U.S. Dept. of Labor, Arlington, Va., for respondents.

Before CUDAHY and FLAUM, Circuit Judges, and BARTELS, Senior District Judge.**

FLAUM, Circuit Judge.

In this case we review an order issued by the Federal Mine Safety and Health Review Commission ("Commission"), which affirmed the decision of an administrative law judge ("ALJ") finding violations of the Federal Mine Safety and Health Amendments Act of 1977 and assessing penalties for these violations. For the reasons set forth below, we affirm and enforce the order.

Sellersburg Stone Company ("Sellersburg") operates an open-pit limestone quarry and a crushed limestone operation in Clark County, Indiana. The mining technique used by Sellersburg involves a two-step procedure. In the first step, "primary blasting," boulders are blasted from the side of the quarry. Those boulders that are too large to pass through the stone-crusher then are moved by a front-end loader to the floor of the quarry, where they are closely clustered, in preparation for "secondary blasting." In this second step, workers drill a hole into each boulder and place a stick of dynamite in each hole. The workers add a primer cord to each stick of dynamite and pack each hole with fine stones. The dynamite in approximately twenty boulders is then detonated at one time. If, after the detonation, a dynamite charge does not explode, the standard safe practice in the industry is to inspect all remaining boulders for undetonated dynamite by turning the boulders over.[1] Sellersburg, however, did not follow this practice. It relied instead upon the workers' visual inspection of only the top sides of the boulders.

On December 13, 1979, two Sellersburg workers were engaged in secondary blasting. David Hooper drilled the boulders that had been collected in a cluster, while Carl Sparrow loaded the drill holes with sticks of dynamite and added the primer cord to the dynamite. After Hooper and Sparrow detonated the dynamite of about twenty boulders, Hooper began inspecting and drilling the remaining boulders. He inspected the top of one boulder, but he did not have the equipment to turn it over in order to inspect its bottom. Hooper then began drilling the boulder, but when the drill was about halfway through the boul-

---

** The Honorable John R. Bartels, Senior District Judge for the Eastern District of New York, is sitting by designation.

1. Since boulders often are moved during a dynamite blast, the drill hole of an undetonated stick of dynamite may be visible only by turning the boulder over.

der, the boulder exploded, causing him permanent disabling injuries.[2]

After Hooper was taken to the hospital, Sellersburg did not preserve the accident site. Instead, it removed or disturbed all evidence of the accident and then resumed normal mining activity. In addition, Sellersburg did not inform the Mine Safety and Health Administration of the Department of Labor ("MSHA") about the accident until January 2, 1980, when it mailed a written report of the accident to the MSHA's subdistrict office located in Vincennes, Indiana.

On January 3, 1980, MSHA inspectors examined the petitioner's quarry and issued three citations to Sellersburg for violating three MSHA regulations: 30 C.F.R. §§ 50.10, 50.12, 56.6–106.[3] An assessment officer of the MSHA proposed, on July 2, 1980, that the petitioner be assessed penalties of $78 for the violation of section 50.10, $78 for the violation of section 50.12, and $1000 for the violation of section 56.6–106. On July 25, 1980, Sellersburg notified the Secretary of Labor that it would contest the citations and the proposed penalties. Several weeks later, on August 8, 1980, the Secretary petitioned the Commission for an assessment of the proposed civil penalties, in accordance with 29 C.F.R. § 2700.27.

A hearing on the petition for assessment took place before an ALJ on December 10, 1981. The ALJ issued his decision on July 26, 1982, affirming the violations and imposing penalties of $1000 for the violation of section 50.10, $1000 for the violation of section 50.12, and $7500 for the violation of section 56.6–106. Sellersburg then petitioned the Commission for discretionary review of the ALJ's decision, and review was granted on September 1, 1982. In a decision dated March 11, 1983, the Commission affirmed the ALJ's findings of violations and his assessment of penalties. On April 6, 1983, Sellersburg filed a petition for review with this court, arguing both that the ALJ made insufficient factual findings to support his determination that Sellersburg violated section 56.6–106, and that the amount of penalties assessed is contrary to law and constitutes an abuse of discretion.

### Factual Findings Relating to 30 C.F.R. § 56.6–106

Section 56.6–106 of the MSHA regulations requires that, at mining operations, "faces and muck piles" must be examined for undetonated explosives.[4] Sellersburg argues that, since the ALJ did not find

**2.** This account of the events preceding the accident was given by Hooper at the hearing before the ALJ in this case. At this hearing, Sparrow testified that he and Hooper discovered the undetonated charge in the boulder and that, after he told Hooper to drill holes in the other boulders, he returned to his truck. The ALJ clearly rejected Sparrow's testimony in favor of Hooper's account of the events. See ALJ Decision dated July 26, 1982, at 3. We hold that these factual findings are supported by substantial evidence, and we refuse to disturb them. See 30 U.S.C. § 816(a)(1) (1982) ("[t]he findings of the Commission with respect to questions of fact, if supported by substantial evidence on the record considered as a whole, shall be conclusive").

**3.** 30 C.F.R. § 50.10 provides:
   If an accident occurs, an operator shall immediately contact the MSHA District or Subdistrict Office having jurisdiction over its mine. If an operator cannot contact the appropriate MSHA District or Subdistrict Office it shall immediately contact the MSHA Headquarters Office in Washington, D.C., by telephone, collect at (202) 783-5582.
   30 C.F.R. § 50.12 provides:

Unless granted permission by an MSHA District Manager or Subdistrict Manager, no operator may alter an accident site or an accident related area until completion of all investigations pertaining to the accident except to the extent necessary to rescue or recover an individual, prevent or eliminate imminent danger, or prevent destruction of mining equipment.
30 C.F.R. § 56.6–106 provides:
   Faces and muck piles shall be examined by a competent person for undetonated explosives or blasting agents and any undetonated explosives or blasting agents found shall be disposed of safely.

**4.** See supra note 3. Although the MSHA regulations do not define the term "muck pile," the word "muck" appears in the United States Department of Interior's Dictionary of Mining, Mineral, and Related Terms (1968), and one of its listed definitions is "rock or ore broken in process of mining."

specifically that the boulder that exploded and injured Hooper was part of a muck pile, the ALJ's finding of a violation of section 56.6–106 must be vacated or modified. The Commission considered this argument in its review of the ALJ's decision, and it concluded that the ALJ implicitly had found the boulder to be part of a muck pile. Furthermore, the Commission concluded that the ALJ's findings sufficiently supported his determination that Sellersburg violated section 56.6–106.

Under the Commission's regulations, decisions of ALJs must "include findings of fact, conclusions of law, and the reasons or bases for them, on all material issues of fact, law or discretion presented by the record." 29 C.F.R. § 2700.65 (1983). Such findings and conclusions are also mandated by section 557(c) of the Administrative Procedure Act. *See* 5 U.S.C. § 557(c)(3)(A)(1982).[5] In interpreting section 557(c), the Supreme Court has held that, where an agency makes no specific findings upon a contention, the agency complies with the Administrative Procedure Act if it considers the contention and discusses it. *Minneapolis & St. Louis Railway Co. v. United States*, 361 U.S. 173, 193, 80 S.Ct. 229, 241, 4 L.Ed.2d 223 (1959). Federal courts also have held that they are not disposed to overturn an agency's decision on the basis of section 577(c) "if the agency's path, although not ideally clear, may reasonably be discerned." *Benmar Transport & Leasing Corp. v. ICC*, 623 F.2d 740, 746 (2d Cir.1980). *See also Wasson v. SEC*, 558 F.2d 879, 884 (8th Cir.1977); *Chieppo Bus Co. v. United States*, 383 F.Supp. 1192, 1198 (D.Conn. 1974).

■ In the present case, the ALJ found that Sellersburg "did not properly examine the muck pile after secondary blasting, because after such blasting it drilled boulders without turning them over to examine each boulder for a dynamite drill hole on the bottom of the boulder." ALJ Decision dated July 26, 1982, at 3. It is apparent from the ALJ's brief discussion that he considered and decided that the boulder that injured Hooper was part of a muck pile. We thus are able to discern the path taken by the ALJ, and we hold that this path sufficiently supports his determination of a violation of section 56.6–106.

### Penalties

According to Sellersburg, the penalties in this case were assessed erroneously because the ALJ and the Commission failed to make the findings required for "determination of penalty amount" as outlined in 30 C.F.R. § 100.3(a). Sellersburg cites *Allied Products Co v. FMSHRC*, 666 F.2d 890 (5th Cir.1982), for the proposition that both the ALJ and the Commission must follow the procedure set forth in section 100.3(a), and it argues that in the absence of appropriate findings, the penalties must be deemed excessive, arbitrary and capricious, and an abuse of discretion.

In its decision affirming the penalties assessed by the ALJ, the Commission expressed its position that the *Allied* decision "misperceived the penalty assessment authority of the Commission and its judges under the Act." Commission Decision dated March 11, 1983, at 4. The Commission stated that, in contested cases, the amount of the penalties to be assessed by the Commission and its judges is a *de novo* determination based on the six statutory criteria

**5.** Section 557(c)(3)(A) of the Administrative Procedure Act provides that all administrative decisions "shall include a statement of ... findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record ...." 5 U.S.C. § 557(c)(3)(A) (1982). This provision applies when an agency's governing statute requires a hearing in connection with a particular agency action. *See Gallagher & Ascher Co. v. Simon*, 687 F.2d 1067, 1072 (7th Cir.1982).

Since the Federal Mine Safety and Health Act requires a hearing when a mine operator notifies the Secretary of Labor that it intends to contest the issuance of a citation or a notification of assessment, *see* 30 U.S.C. § 815(d) (1982), the requirements of 5 U.S.C. § 557(c)(3)(A) are applicable to the decision of the ALJ in the present case. *See also The Anaconda Co.*, 2 M.S.H.C. 1154, 1154 (1981) (ALJ's decision must satisfy the requirements of both 5 U.S.C. § 557(c) and 29 C.F.R. § 2700.65).

specified in 30 U.S.C. § 820(i). Applying section 820(i), the Commission concluded that the ALJ erred in failing to make specific findings regarding four of the six criteria. However, the Commission determined from the record that information relating to these four criteria had been uncontested. Choosing not to remand the case for specific findings, the Commission entered the uncontested information as the required findings. It then ruled that in light of all the findings, the assessed penalties were not excessive.

We begin with a review of the process of penalty assessment under the Federal Mine Health and Safety Act ("Act"). The Act empowers the Secretary of Labor, acting through the MSHA, to issue citations against mine operators that have violated the standards of the Act and also to propose civil penalties for these violations. *See* 30 U.S.C. §§ 814(a), 815(a) (1982). In proposing penalties, the Secretary must consider the six criteria listed in 30 U.S.C. § 815(b)(1)(B) (1982).[6] Applying these criteria, the Secretary assigns penalty points and then converts the points into proposed penalty amounts, pursuant to MSHA regulations. *See* 30 C.F.R. § 100.3 (1980).[7]

If a mine operator timely notifies the Secretary of its intent to contest the Secretary's citations or proposed penalties, the Secretary must advise the Commission of such notification, and the Commission must afford an opportunity for a hearing before an ALJ. *See* 30 U.S.C. §§ 815(d), 823(d)

(1982). The ALJ, after determining that a violation has occurred, may affirm, modify, or vacate the Secretary's proposed penalties. *See id.* at § 815(d). A mine operator that is adversely affected or aggrieved by the ALJ's decision may petition the Commission for review. *Id.* at § 823(d)(2)(A)(i). The Commission may accept review and, after examining the record, it may affirm, set aside, or modify the decision of the ALJ. *Id.* at § 823(d)(2)(c). In assessing penalties, both the ALJ and the Commission must consider the same six criteria that are considered by the Secretary. *Compare id.* at § 820(i)[8] *with id.* at § 815(b)(1)(B).[9] However, neither the ALJ nor the Commission is bound by the Secretary's proposed penalties. 29 C.F.R. § 2700.29(b) (1983). If a mine operator is adversely affected by the decision of the Commission, it may obtain review in the United States Court of Appeals for the circuit in which the violation is alleged to have occurred. 30 U.S.C. § 816(a)(1) (1982).

Having set forth the statutory and regulatory framework for penalty assessment under the Act, we now consider Sellersburg's argument that the assessed penalties in the present case are excessive and an abuse of discretion. Sellersburg relies heavily upon *Allied Products Co. v. FMSHRC*, 666 F.2d 890 (5th Cir.1982), where a mine operator presented a similar claim of excessive penalties. The Fifth Circuit correctly identified the statutory crite-

---

**6.** 30 U.S.C. § 815(b)(1)(B) (1982) provides:

In determining whether to propose a penalty to be assessed under section 820(b) of this title, the Secretary shall consider the operator's history of previous violations, the appropriateness of such penalty to the size of the business of the operator charged, whether the operator was negligent, the effect on the operator's ability to continue in business, the gravity of the violation, and the demonstrated good faith of the operator charged in attempting to achieve rapid compliance after notification of a violation.

**7.** The MSHA's civil penalty procedures, outlined in 30 C.F.R. Part 100, were revised effective May 21, 1982. We will refer, however, to the regulations in effect at the time that the civil penalties were first proposed in this case. *See* 30 C.F.R. Part 100 (1980).

**8.** 30 U.S.C. § 820(i) (1982) provides in relevant part:

The Commission shall have authority to assess all civil penalties provided in this chapter. In assessing civil monetary penalties, the Commission shall consider the operator's history of previous violations, the appropriateness of such penalty to the size of the business of the operator charged, whether the operator was negligent, the effect on the operator's ability to continue in business, the gravity of the violation, and the demonstrated good faith of the person charged in attempting to achieve rapid compliance after notification of a violation.

**9.** *See supra* note 6.

ria to be considered by the ALJ and the Commission in assessing penalties, pursuant to 30 U.S.C. § 820(i). The court then applied the penalty point formula set forth in 30 C.F.R. § 100.3 and determined that the penalties assessed by the Commission were excessive.

■ It is clear that the penalty point formula outlined in 30 C.F.R. § 100.3 applies to the proposed penalty assessments of the MSHA, which is under the direction of the Secretary. 30 C.F.R. § 100.2 (1979).[10] However, we find no basis upon which to conclude that these MSHA regulations also govern the Commission. It cannot be disputed that the Commission and its ALJs constitute an adjudicative body that is independent of the MSHA. Sen. Rep. No. 461, 95th Cong. 1st Sess. 38 (1977). This body is governed by its own regulations, which explicitly state that, in assessing penalties, it need not adopt the proposed penalties of the Secretary. 29 C.F.R. § 2700.29(b) (1983). Furthermore, neither the Act nor the Commission's regulations require the Commission to apply the formula for determining penalty proposals that is set forth in section 100.3 of the MSHA regulations.[11] Since we cannot conclude that the ALJs and the Commission must follow the procedure outlined in 30 C.F.R. § 100.3 in order to assess penalties, we refuse to utilize this procedure in order to determine the reasonableness of the Commission's assessment, as the Fifth Circuit did in *Allied*. We instead base our

review upon the Commission's consideration of the six criteria listed in 30 U.S.C. § 820(i).[12]

The Commission accepted the ALJ's findings that Sellersburg's violations were the result of negligence and that all three violations were serious. Although the Commission concluded that the ALJ erred in making no findings with respect to the remaining four criteria, the Commission found, from a review of the record, that "there was no controversy between the parties concerning the record evidence bearing on each of these criteria." Commission's Decision dated March 11, 1983, at 8. The Commission then entered the record evidence as the required findings. Specifically, the Commission found: (1) that the parties stipulated to Sellersburg's good faith in abating the violations; (2) that, on the issue of size, Sellersburg's annual production was approximately 450,000 tons of limestone, and Sellersburg employed between fourteen and twenty persons; (3) that, on the issue of history of violations, the Secretary entered into evidence, and Sellersburg did not challenge, an exhibit indicating that Sellersburg was charged with thirty-five violations between January 1978 and January 1980; and (4) that Sellersburg refused to stipulate that payment of civil penalties would not affect its ability to continue in business, but it did not offer any argument or evidence to the contrary. In light of all the findings, the Commission concluded that it could not say

---

**10.** 30 C.F.R. § 100.2 (1980) provides:

The criteria and procedures contained in this part are applicable with respect to all initial reviews and proposed assessments issued on or after (the effective date of these regulations). The Office of Assessments, Mine Safety and Health Administration, United States Department of Labor, shall review each citation and order and shall make proposed assessments of civil penalties pursuant to this part.

**11.** *See Shamrock Coal Co.*, 1 FMSHRC 469 (1979) (ALJ may make *de novo* assessment of penalties and is not required to follow the criteria for assessment of penalties contained in 30 C.F.R. Part 100). This point has been made explicit in the discussion accompanying the revisions of 30 C.F.R. Part 100, which are not

applicable in the present case, but which are effective in cases where the MSHA notified the operator of its proposed penalties after May 21, 1982. The discussion states:

The formula [outlined in 30 C.F.R. § 100.3] is an administrative mechanism used by MSHA to determine the appropriate penalty by applying the statutory criteria to the particular facts surrounding a violation. When a proposed penalty is contested, neither the formula nor any other aspect of these regulations applies. If the proposed penalty is contested, the . . . Commission exercises independent review, and applies the six statutory criteria without consideration of these regulations.

47 Fed.Reg. 22,287 (1982).

**12.** *See supra* note 8.

"that the penalties assessed [were] inconsistent with the statutory criteria and the deterrent purpose behind the Act's provisions for penalties." *Id.* at 9. It then found that the ALJ's penalty assessments did not constitute an abuse of discretion.

■ We note, first, that the Commission's entering of undisputed record information as findings was proper under the Act. *See* 30 U.S.C. § 823(d)(2)(C) (1982) ("[t]he Commission ... may ... modify the decision or order of the administrative law judge in conformity with the record"). The Commission must remand a case to the ALJ only if it "determines that further evidence is necessary on an issue of fact." *Id.* Given the Commission's conclusion that uncontroverted evidence did not warrant further factual findings, such a remand was not required in this case.[13]

■ Turning to the Commission's application of the statutory criteria to the facts of this case, we find that the Commission accurately considered the evidence pertaining to each criterion. Sellersburg had a history of previous violations. Although its operation was small to medium-sized, Sellersburg presented no evidence that payment of civil penalties would adversely affect its ability to continue in business.[14] Furthermore, notwithstanding Sellersburg's good faith in abating the violations, the ALJ specifically found gross negligence in Sellersburg's violation of 30 C.F.R. § 56.6–106 and negligence in Sellersburg's violations of 30 C.F.R. §§ 56.10, 56.12. Finally, the ALJ found that the violation of section 56.6–106 was "most serious" and

posed a "grave risk" to employees, and he found that the violations of sections 56.10 and 56.12 were serious and hindered the MSHA's ability to conduct appropriate investigations. On the basis of these reasonable considerations, we cannot conclude that the penalties assessed by the ALJ and affirmed by the Commission were excessive.

Accordingly, the Commission's decision dated March 11, 1983, is affirmed and enforced.

---

**13.** We do not read *Donovan ex rel. Chacon v. Phelps Dodge Corp.,* 709 F.2d 86 (D.C.Cir.1983), as holding to the contrary. In *Donovan,* the Commission reversed an ALJ's finding that a mine operator discriminated against an employee active in promoting mine safety. The District of Columbia Circuit stated that the Commission is bound statutorily to uphold an ALJ's factual determinations that are supported by substantial evidence. It then held that, because the ALJ's finding of discrimination was supported by substantial evidence, the Commission exceeded its statutory standard of review in reversing this finding. In the present case, the Commission did not reverse a factual finding of the ALJ. Instead, it modified the ALJ's decision

by entering as factual findings the uncontroverted information that was contained in the record and that the ALJ took into account in assessing civil penalties. *See* ALJ Decision dated July 26, 1982, at 5 ("[b]ased upon the statutory criteria for assessing a civil penalty, respondent is assessed [penalties totalling $9500]").

**14.** In the absence of proof that the payment of civil penalties would adversely affect a company's ability to stay in business, it is presumed that there would be no such effect. *See Buffalo Mining Co.,* 2 IBMA 226, 247–48, 251, 252 (1973) (decided under the predecessor Federal Coal Mine Health and Safety Act of 1969).