57 F.3d 1068
 1995 O.S.H.D. (CCH) P 30,827
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
W.S. FREY COMPANY, INCORPORATED, Petitioner,
v.
SECRETARY OF UNITED STATES DEPARTMENT OF LABOR; Mine Safety
and Health Administration; Federal Mine Safety
and Health Review Commission, Respondents.
 No. 94-1860.
 United States Court of Appeals, Fourth Circuit.
 Argued: April 5, 1995.
Decided: June 13, 1995.
 
 ARGUED: Thomas Moore Lawson, Hazel & Thomas, P.C., Winchester, VA, for Petitioner. Robin Ann Rosenbluth, Office of the Solicitor, United States Department of Labor, Arlington, VA, for Respondents. ON BRIEF: Thomas S. Williamson, Jr., Solicitor of Labor, Edward P. Clair, Associate Solicitor, W. Christian Schumann, Counsel, Appellate Litigation, Office of the Solicitor, United States Department of Labor, Arlington, VA, for Respondents.
 Before MURNAGHAN and MOTZ, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 W.S. Frey Company (Frey) appeals from an order of the Federal Mine Safety and Health Review Commission (the Commission), refusing to review and thereby adopting the decision of the Administrative Law Judge (the ALJ). We affirm.
 
 
 2
 This case arises from two fatal accidents that occurred two days apart at the Clearbrook Mine and Mill (the mine), owned by Frey. The first accident occurred on December 11, 1992 when a truck driver at the mine raised the bed of his truck, hit a power line and was killed. It gave rise to one citation contested in this appeal. The second accident, which resulted in three citations contested in this appeal, occurred two days later, on December 13, 1992. It resulted in the death of a mine employee who became trapped in the opening of a coal surge tunnel at the mine. Each of the accidents was investigated by inspectors from the Mine Safety and Health Administration (MSHA) and resulted in citations for violation of the Federal Mine Safety and Health Amendments Act of 1977, and proposed penalties. Frey contested the citations and a hearing was held before an administrative law judge. The ALJ held with respect to each of the four violations: 1) there was a violation; 2) it was significant and substantial; and 3) the violation was the result of high negligence and/or unwarrantable failure. In accordance with his findings the ALJ imposed substantial fines. The Commission denied Frey's petition for discre tionary review of the ALJ's decision. See 30 U.S.C. Sec. 823(d). Pursuant to 30 U.S.C. Sec. 816(a), Frey appealed to this court.
 
 I.
 
 3
 We review the ALJ's findings to determine if they are supported by substantial evidence in the record. See, e.g., Consolidation Coal Co. v. FMSHRC, 795 F.2d 364, 368 (4th Cir.1986). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support [the Commission's] conclusion.' " Austin Power, Inc. v. Secretary of Labor, 861 F.2d 99, 101 (5th Cir.1988) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Frey challenges each citation in all respects, i.e., it contends that it committed no violations, that none of the alleged violations--if they occurred--were significant and substantial or the result of unwarrantable failure, and that the fines assessed were excessive.
 
 
 4
 The elements of each of the four violations are specific to the regulations allegedly violated. In contrast, the standard for establishing that a given violation is significant and substantial or an caused by an unwarrantable failure to comply with a safety standard is the same for all of the alleged violations. "There are four prerequisites to establishing a significant and substantial violation of a safety standard: 1) an underlying violation; 2) a discrete safety hazard; 3) a reasonable likelihood that the hazard will result in injury; and 4) a reasonable likelihood that the injury will be serious." Austin Power, 861 F.2d at 103. An "unwarrantable failure" is conduct that is " 'not justifiable' or 'inexcusable.' " Secretary of Labor v. S & H Mining, Inc., 15 FMSHRC 2387, 2390 (1993). Ordinary negligence will not support an unwarrantable failure finding. Id. On the other hand, a violation can be an unwarrantable failure because an operator should have known about a violation. See Pocahontas Fuel Co. v. Andrus, 590 F.2d 95 (4th Cir.1979). This is so because highly negligent conduct does support an unwarrantable failure finding. See Peabody Coal Co. v. Secretary of Labor, 16 FMSHRC 42, 48 (1994); Secretary of Labor v. Varra Companies, Inc., 15 FMSHRC 757, 764 (1993).
 
 II.
 
 5
 The facts of the December 11 power line accident are relatively simple. A truck driver was killed at the mine when he raised the bed of his truck after pulling off to the lefthand shoulder of the road. The wires that the truck bed came in contact with were 28 feet above the ground. A similar accident had occurred in 1988 within 15 feet of the site of the December 11, 1992 accident. Subsequent to that accident Frey took no remedial measures although it did negotiate with the power company concerning who was responsible for the lines.
 
 
 6
 Frey was cited for violation of 30 C.F.R. Sec. 56.12066, which states:
 
 
 7
 Where metallic tools or equipment can come into contact with trolley wires or bare powerlines, the lines shall be guarded or deenergized.
 
 
 8
 The ALJ found that Frey's conduct leading up to the fatal accident constituted "glaring, irresponsible and totally inexcusable failure to meet the standard of care required." Frey contends that "the power lines in question were owned by a local utility and that Frey did not have the control nor the authority to do anything with the lines." Frey's own witnesses testified, however, that the power company claimed that the power line was Frey's responsibility. Moreover, Frey did not even place warning signs at the spot of the accident, a precautionary measure indisputably within its power.
 
 
 9
 The ALJ credited testimony that the practice of raising beds on its premises was contrary to Frey policy and actively discouraged.[1] He found, however, that Frey's objections "did not prevent the practice," and that "it was difficult for Frey to control the actions of the truckers." It is clear that Frey had this same policy in place prior to the 1988 accident, so that the company knew that its policy was insufficient to prevent such accidents. In addition, the ALJ found that "it was reasonabl[y] likely truck drivers would pull to the left, and having done that would raise their beds." All of these findings are supported by substantial record evidence.
 
 III.
 
 10
 Three citations arose from the investigation of the death of the Frey employee who was found trapped in the opening of a coal surge tunnel. The inspector, who investigated this accident and issued the citations, contended that the employee was killed by falling into the syntron feeder while feeding coal into the surge hole. The ALJ concluded that there was insufficient evidence to determine how the employee died, but nonetheless sustained the inspector's citations.
 
 
 11
 The accident in question occurred at an open sided "coal shed." At the center of the floor the shed was a "surge hole." There was no "grisly, or wire grating" placed over the surge hole. The surge hole led to a "hopper" that dropped seven feet to a "syntron feeder." A syntron feeder is a "surge vibrator" that "shook coal onto a conveyor belt." There was a "dog house opening" at the lower end of the syntron feeder. Front end loaders placed "surge piles" of coal on or near the surge hole and employees then fed coal into the surge hole as necessary.
 
 A.
 
 12
 Following the December 13 accident MSHA cited Frey for violation of 30 C.F.R. Sec. 56.16002, which provides:
 
 
 13
 (a) Bins, hoppers, silos, tanks, and surge piles, where loose unconsolidated materials are stored, handled, or transferred shall be--
 
 
 14
 (1) Equipped with mechanical devices or other effective means of handling materials so that during normal operations persons are not required to enter or work where they are exposed to entrapment by the caving or sliding of materials....
 
 
 15
 The ALJ found that employees were "exposed to entrapment by caving or sliding of materials" because surge hole "hang ups" were a "normal occurrence" requiring employees to "free up" the surge hole using a 9 1/2 foot metal bar. He found that "the task of freeing hang ups was inherently dangerous." The danger to employees was twofold. First, in the winter, coal could crust over, thus forming "a thin 'bridge' of coal" over the surge hole. Because an employee "easily could ... step on the coal bridge and fall into the hopper," there was a danger of entrapment "by the caving or sliding of materials." Second, in order to free a hang up, it was necessary to get reasonably close to the surge hole, even if one did not mistakenly stand on it. There was testimony that this required, at times, standing on the surge pile. Furthermore, there is no dispute that coal fed into the surge hole "in an inverted cone shape from the top."[2] Because, inter alia,"the radius of the funnel varied depending upon the size of the coal," there was a danger that an employee would "stand on coal that was a part of the draw," and thus be dragged into the surge hole. Frey argues that "during normal operations" persons were not "required to enter or work where" they were "exposed to entrapment by the caving or sliding of materials" so they were not required to have "mechanical devices or other effective means of handling materials." There is, however, substantial evidence to support the ALJ's conclusion to the contrary. See, e.g., JA 73.
 
 
 16
 The ALJ found that "Frey was highly negligent" for several reasons, among them that it was only "following Bernaldes' death [that Frey management] became aware of employees who had been caught in the surging coal." Although Frey management knew that "it was hazardous for employees to stand too close to the surge hole," because of "a failure of communication at the facility" management was unaware that employees had, in fact, fallen into the surge hole.[3] The ALJ considered Frey's asserted ignorance to be an aggravating rather than a mitigating factor in determining Frey's level of negligence because it demonstrated a lack of attentiveness to an obvious danger. The ALJ concluded that the danger was so apparent that management "should have realized" that "inevitably an employee would be too near the surge hole or would walk over the crusted surge hole."
 
 
 17
 In addition, the ALJ found that Frey's policy was to have "employees instruct one another on how to free hang-ups" and that this "lack of operator-initiated training typified Frey's nonch[a]lance to the hazard involved." The ALJ did note that the "surge hole had been in existence since 1967 and Frey had never been cited for violations relating to conditions at the surge pile." Taken as a whole, however, the ALJ found that "the overwhelming impression from the record is that the employees assigned to free hang-ups at the surge pile were sent to do a very dangerous job and Frey was simply lucky a serious injury or fatality had not occurred prior to [this employee's] death." In sum, the ALJ concluded that the danger from the surge hole was manifest and that Frey's ignorance concerning prior surge hole incidents in conjunction with its delegation of training responsibilities was representative of its disregard for that danger. In light of the inferences that the ALJ drew from the evidence, we cannot say that his unwarrantable failure finding was erroneous. Cf. Secretary of Labor v. Leeco Inc., 16 FMSHRC 1496, 1501 (1994) ("inaction" in light of "duty to know" constituted unwarrantable failure). Although the record evidence does not compel the conclusion that the ALJ reached, there is substantial evidence to support it.
 
 B.
 
 18
 Frey was also cited for violation of 30 C.F.R. Sec. 56.18020, which provides:
 
 
 19
 No employee shall be assigned, or allowed, or required to perform work alone in any areas where hazardous conditions exist that would endanger his safety unless he can communicate with others, can be heard, or can be seen.
 
 
 20
 Frey first argues "that working around the coal pile was not a hazardous area." In the alternative, it argues that if there were "hazardous conditions" at the coal pile, they only existed when there was a hangup; that loaders were called in to clear hang-ups; and therefore no employee was required to "perform work alone" in an area where he could not communicate or been seen or heard at a time when he was endangered. We reject the first argument for the same reason that we sustained the prior violation--there is substantial evidence in the record to support the finding that conditions were "extremely hazardous." We reject the second argument because Frey ignores the fact that loaders were only called in to clear hang-ups after an employee was unable to do so on his own.
 
 
 21
 In addition, Frey argues that the ALJ erred in basing his citation upon opinion testimony that if the deceased employee "had fallen into the hopper, no person would have heard his cries for help." It was not improper for the ALJ to elicit the inspector's opinion in this regard, and the assertion that "there was no testimony that anyone had ever fallen into the surge hole or that it was possible for such an event to occur" is simply not true. See, e.g., JA 86, 96, 97, 102, 103. Similarly, Frey wrongly asserts that because the ALJ did not decide how the employee was killed this violation cannot be a significant and substantial one. See Secretary of Labor v. Marion County Limestone Co., 10 FMSHRC 1683, 1691-92 (1988). Lastly, notwithstanding Frey's unsupported assertion "that the surge hole used at the Frey site was the standard in the industry," there is substantial record evidence to support the ALJ's finding that the danger at the surge hole was so apparent that Frey's failure to recognize that danger resulted in an unwarrantable failure to comply with the requirements of Sec. 56.18020.
 
 C.
 
 22
 The third citation that Frey contests in connection with the December 13 accident is for violation of 30 C.F.R. Sec. 56.15005. That section states:
 
 
 23
 Safety belts and line shall be worn when persons work where there is a danger of falling; a second person shall tend the lifeline when bins, tanks, or other dangerous areas are entered.
 
 
 24
 Frey's argument that it did not violate this section is that the ALJ improperly extended Frey's stipulation "that safety lines were not worn by employees working in the coal shed" to include "a stipulation of the violation itself." Frey argues "that there is no danger of falling into the surge hole," and so it was not a violation to work without wearing a safety line. Frey's argument is meritless because there was substantial evidence that there was a danger of falling into the surge hole. For the same reasons, i.e., there is substantial evidence that there was a danger of falling, Frey's argument's that the violation was not significant and substantial is not persuasive. Frey does not make a separate argument with respect to this violation concerning the unwarrantable failure finding but incorporates its earlier arguments by reference. Because we reject those arguments, we affirm the unwarrantable failure finding with respect to this violation.
 
 IV.
 
 25
 Finally, Frey argues that the civil penalties imposed for each violation are excessive and that the ALJ "failed to ask what effect an increase of the civil penalties would have on Frey's ability to continue in business." With respect to the December 11 accident the Secretary proposed a penalty of $9,500. The ALJ, after the hearing, imposed a penalty of $35,000. With respect to the December 13 accident, the Secretary proposed penalties of $3,500, $6,000, and $6,000 respectively. The ALJ imposed penalties of $10,000 for each violation. The maximum penalty that could have been imposed for each of these violations is $50,000. See 30 U.S.C. Sec. 820(a). Following a hearing, the ALJ is authorized to determine de novo the amount of the civil penalties that should be imposed pursuant to the factors in 30 U.S.C. Sec. 820(i).[4] See Sellersburg Stone Co. v. FMSHRC, 736 F.2d 1147, 1152 (7th Cir.1984). We review civil penalties only for abuse of discretion. See B.L. Anderson, Inc. v. FMSHRC, 668 F.2d 442, 444 (8th Cir.1982).
 
 
 26
 Frey bore the burden of showing that a penalty would affect its ability to operate in the future. Absent such proof, it is presumed that there would be no such effect from any authorized penalty. See Sellersburg Stone Co., 736 F.2d at 1153 n. 14. Frey offered no such proof. The ALJ considered the appropriate factors and then imposed fines far greater than those proposed by the Secretary,[5] but considerably less than the maximum permitted under the statute. Frey makes no other arguments, apart from its arguments on the merits, that the penalties imposed in the present case are excessive. Therefore, because we find that the ALJ's decision was otherwise proper we similarly find that the penalties imposed were not an abuse of discretion.
 
 AFFIRMED
 
 
 [1]
 The fact that Frey told truck drivers not to engage in the conduct that is the basis for the violation is no defense. See Asarco, Inc.-Northwestern Min. Dept. v. FMSHRC, 868 F.2d 1195, 1197 (10th Cir.1989)
 
 
 [2]
 Frey contends that "[t]he judge erred in relying too heavily upon the testimony of Dwayne Johnson concerning the irregularity of the way the coal would feed." The irregularity of the draw, i.e., "that the cone was not always symmetrical," was both supported by substantial evidence and not essential to the ALJ's decision
 
 
 [3]
 There was conflicting testimony as to whether or not complaints had been registered by employees at safety meetings concerning the danger represented by the surge hole. The ALJ, however, did not rely on this testimony in making his findings
 
 
 [4]
 Section 820(i) requires the Commission to consider the following factors in assessing penalties: " the operator's history of previous violations, the appropriateness of such penalty to the size of the business of the operator charged, whether the operator was negligent, the effect on the operator's ability to continue in business, the gravity of the violation, and the demonstrated good faith of the person charged in attempting to achieve rapid compliance after notification of a violation." The Secretary considers these same factors in proposing a penalty to be assessed, see 30 U.S.C. Sec. 815(b)(1)(B), but is not required to make findings of fact concerning them. See Sec. 820(a)
 
 
 [5]
 In Sellersburg Stone the Seventh Circuit held that it was not error for the ALJ to impose substantially greater penalties than those proposed by the Secretary. Id. at 1149