F I L E D
United States Court of Appeals
Tenth Circuit

AUG 24 2004

PATRICK FISHER
Clerk

PUBLISH

### UNITED STATES COURT OF APPEALS

### TENTH CIRCUIT

HAZEL OLSON,

Petitioner,

v.

FEDERAL MINE SAFETY AND
HEALTH REVIEW COMMISSION,

Respondent,

JACOBS RANCH COAL COMPANY,

Intervenor.

No. 03-9528

**PETITION FOR REVIEW OF A DECISION OF THE
FEDERAL MINE SAFETY AND HEALTH REVIEW COMMISSION
(No. WEST-2002-305-D)**

Malcolm S. Mead of Hall & Evans, LLC, Denver, Colorado, for Petitioner.

L. Anthony George of Jackson Kelly PLLC (Laura E. Beverage, and Anne T.
Nichting with him on the brief), Denver, Colorado, for Intervenor.

Before **LUCERO** , **McKAY** , and **HARTZ** , Circuit Judges.

**HARTZ** , Circuit Judge.

Hazel Olson (Complainant) seeks review of the dismissal of her administrative complaint by an Administrative Law Judge (ALJ) of the Federal Mine Safety and Health Review Commission (the Commission). Complainant failed to file her complaint within the 60-day period provided by § 105(c)(2) of the Federal Mine Safety and Health Act, 30 U.S.C. § 815(c)(2). She claims that she delayed filing until her husband was disabled because of her fear that her former employer, Jacobs Ranch Coal Company (Jacobs Ranch), would retaliate against her husband (who worked for Jacobs Ranch) or her son (who might apply for work). The ALJ found that she had not met her burden of establishing that her untimely filing was the result of justifiable circumstances, and that Jacobs Ranch had demonstrated that it would be prejudiced in defending against her allegations if the untimely filing were permitted. Exercising jurisdiction under 30 U.S.C. § 816(a)(1), we affirm. We agree with the ALJ that Complainant failed to raise a genuine factual issue that her alleged fear of retaliation would have been reasonable.

## I.   BACKGROUND

*A. The Mine Act*

Under 30 U.S.C. § 815(c)(2), "Any miner . . . who believes that [s]he has been discharged, interfered with, or otherwise discriminated against by any person in violation of this subsection may, *within 60 days after such violation occurs*,

file a complaint with the Secretary [of Labor] alleging such discrimination." (emphasis added). After a miner files a complaint, the Mine Safety and Health Administration (MSHA) investigates it on behalf of the Secretary of Labor. See, e.g., Simpson v. Fed. Mine Safety & Health Review Comm'n, 842 F.2d 453, 456 n.3 (D.C. Cir. 1988). If the Secretary finds that a violation occurred, the Secretary may pursue the claim on the miner's behalf before the Commission. 30 U.S.C. § 815(c)(2). If not, the miner may file a claim with the Commission on her own behalf under 30 U.S.C. § 815(c)(3).

The Commission does not consider the 60-day limit of § 815(c)(2) to be jurisdictional. See Morgan v. Arch, 21 FMSHRC 1381, 1386 (1999) ("Commission case law is clear that the 60-day period for filing a discrimination complaint under section . . . § 815(c)(2), is not jurisdictional."). It will hear cases in which a complaint's untimely filing is due to "justifiable circumstances, including ignorance, mistake, inadvertence and excusable neglect." Perry v. Phelps Dodge Morenci, Inc., 18 FMSHRC 1918, 1921-22 (1996). On the other hand, "[e]ven if there is an adequate excuse for late filing, a serious delay causing legal prejudice to the respondent may require dismissal." Id. at 1922. The Commission places the burden of proving justifiable circumstances on the miner, and places the burden of demonstrating material legal prejudice on the mine operator. See id.; Schulte v. Lizza Indus. Inc., 6 FMSHRC 8, 13 (1984).

-3-

*B. Facts*

Complainant and her husband Emmett reside in Wyoming's Powder River Basin, where they were formerly employed at the Jacobs Ranch Coal Mine (the Mine). They married in 1988 and have one son, Josh. Complainant began working at the Mine in 1979, Emmett in 1977. (Josh has not been employed at the Mine.) The Mine was then owned by the Kerr-McGee Company, but was purchased by the Kennecott Energy Company in July 1998.

Complainant asserts that she "tends to be vocal about safety issues." Aplt. Br. at 3. In 1994 she filed a safety complaint under 30 U.S.C. § 813(g) and a discriminatory-retaliation complaint under 30 U.S.C. § 815(c). She filed a second retaliation complaint under § 815(c) in May 1995. According to the ALJ, the MSHA failed to pursue these claims on Complainant's behalf and she elected not to pursue them on her own.

Complainant alleges that her filing of these claims did not endear her to management, and the animosity remained after the Mine was sold because much of the management stayed on. Jacobs Ranch counters that it is not responsible for interactions between Complainant and management prior to its purchase of the Mine, and contends that her statement that management stayed on is unsupported by any evidence and contradicted by her own testimony. It concedes that after its

purchase of the Mine, Complainant's relationships with her supervisors and co-workers were often less than amicable, but it assigns the blame to Complainant.

In May 1999 Jacobs Ranch suspended Complainant for three days for committing a safety violation. In response, Complainant filed yet another retaliation complaint under § 815(c) in June 1999, alleging that she received a harsher suspension than was appropriate for the violation because of her filing previous complaints in 1994 and 1995. Again the MSHA declined to pursue the claim on Complainant's behalf, and again Complainant failed to pursue the claim on her own. She also was issued a warning regarding her attendance in October 1999 and was counseled by Jacobs Ranch in November 1999 for alleged abuse of co-workers.

Finally, Jacobs Ranch fired her on December 4, 1999, for allegedly making false statements in a safety investigation. Complainant testified at her deposition that Chad Anderson, the human resources manager at the Mine, and Robert Hammond, the general manager, made the decision to terminate her. Hammond moved to Australia on May 1, 2001, and Anderson moved to Australia on April 1, 2002.

Complainant contends she was terminated in retaliation for complaining about safety issues and for filing complaints in 1994, 1995, and 1999. Although she disputed the grounds of her termination, she took no formal action at the time.

On January 22, 2001, Emmett suffered a stroke, which forced his retirement from the Mine. On February 16, more than 14 months after her firing, Complainant filed a complaint with the MSHA, stating, "Chad Anderson said I was fired for giving false information in a Kennecott investigation. I believe I was fired for filing [complaints under the Mine Act] in the past." R. at 10.

When the MSHA declined to pursue her case, Complainant proceeded on her own behalf under § 815(c)(3). Jacobs Ranch filed an answer contending that the complaint was untimely. Complainant, through counsel, then filed an amended complaint, asserting that she "refrained from filing her discrimination complaint [with the MSHA] until February 16, 2001 because she was fearful that Jacobs Ranch would retaliate against her husband and that her teenage son would not be able to gain employment at the Mine." R. at 37, ¶ 11. Jacobs Ranch moved to dismiss the complaint on the grounds of untimeliness, and attached a transcript of Complainant's deposition to the motion. In her response to the motion, Complainant relied upon a signed declaration.

The ALJ recognized that the 60-day limitations period could be tolled but found that Complainant's evidence would not support tolling, and dismissed the complaint for untimeliness. The Commission declined to exercise discretionary review, making the ALJ's decision the final decision of the Commission, see 30 U.S.C. § 823(d)(1) ("The decision of the administrative law judge of the

Commission shall become the final decision of the Commission 40 days after its issuance unless within such period the Commission has directed that such decision shall be reviewed by the Commission . . . .").  Complainant appeals.

## II.    DISCUSSION

### A.  Standard of Review

Because the ALJ's decision is the final decision of the Commission, we review for substantial evidence the ALJ's findings of fact.  See 30 U.S.C. § 816(a)(1) ("The findings of the Commission with respect to questions of fact, if supported by substantial evidence on the record considered as a whole, shall be conclusive.").  We review de novo the ALJ's legal conclusions, See Walker Stone Co. v. Sec'y of Labor, 156 F.3d 1076,1085 (10th Cir. 1998) ("We reject legally erroneous conclusions."); Utah Power & Light Co. v. Sec'y of Labor, 951 F.2d 292, 293 n.1 (10th Cir. 1991) ("As to questions of law our review is plenary."); see also, e.g., Sec'y of Labor v. Keystone Coal Mining Corp., 151 F.3d 1096, 1099 (D.C. Cir. 1998).

As for the Commission's interpretations of the Mine Act, whether the Commission is entitled to deference depends on whether its interpretation is at odds with that of the Secretary of Labor, acting through the MSHA.  If the Secretary and the Commission agree on an interpretation of the Mine Act, we defer to a reasonable interpretation.  See Utah Power & Light Co. v. Sec'y of

-7-

Labor, 897 F.2d 447, 449 (10th Cir. 1990); see also Energy West Mining Co. v. FMSHRC, 111 F.3d 900, 903 (D.C. Cir. 1997). When the Secretary and the Commission disagree, however, both the Commission and a reviewing court must defer to the Secretary. See, e.g., Joy Techs. v. Sec'y of Labor, 99 F.3d 991, 995 (10th Cir. 1996) ("If the Secretary of Labor and FMSHRC have conflicting interpretations of the Mine Act, the Secretary's interpretations rather than FMSHRC's are entitled to deference under Chevron."); see also Sec'y of Labor v. Excel Mining, LLC, 334 F.3d 1, 6 (D.C. Cir. 2003); Sec'y of Labor v. Mutual Mining, Inc., 80 F.3d 110, 113-15 (4th Cir. 1996).

This case presents a third situation. The legal issue before us is the existence and scope of an equitable exception to the 60-day time limit for filing a complaint under § 815(c)(2). The Commission has interpreted that provision in the absence of interpretive guidance from the Secretary. But even though the MSHA rather than the Commission is the agency primarily responsible for administering the Mine Act, the Supreme Court has indicated in another context that "[t]he Commission . . . was established as an independent-review body to 'develop a uniform and comprehensive interpretation' of the Mine Act," Thunder Basin Coal Co. v. Reich, 510 U.S. 200, 214 (1994) (quoting Hearing on the Nomination of Members of the Federal Mine Safety and Health Review Commission before the Senate Committee on Human Resources, 95th Cong., 2d

-8-

Sess., 1 (1978)). Moreover, Congress granted the Commission authority to promulgate rules of procedure governing proceedings before the Commission and its ALJs. See 30 U.S.C. §§ 815(d) & 823(d)(2). In this circumstance we will defer to the Commission's interpretation if it is reasonable. See Otis Elevator Co. v. Sec'y of Labor, 921 F.2d 1285, 1293 (D.C. Cir. 1990) (Thomas, J.) ("Because the Commission's decision does not interpret any arguably jurisdictional provisions and has never been disapproved by the Secretary, we clearly owe it deference under Chevron." (citing Simpson, 842 F.2d at 458-59 (R.B. Ginsburg, J.))). We do not read United States v. Mead Corp., 533 U.S. 218 (2001), to require less deference.

B. Reasonableness of Commission's Interpretation of § 815(c)(2)

Section 815(c)(2) contains no explicit exception to the requirement that claims be filed with the Secretary within 60 days of an alleged violation. Nevertheless, the Commission's interpretation of the Mine Act to permit equitable tolling is supported by both the background presumptions against which the Act was written and the Act's legislative history. We hold that the Commission's interpretation is reasonable and deserves deference.

The 60-day period in which a miner may file a claim under § 815(c)(2) is a limitations period. As the United States Supreme Court has recognized, "It is hornbook law that limitations periods are customarily subject to equitable tolling,

unless tolling would be inconsistent with the text of the relevant statute." Young v. United States, 535 U.S. 43, 49 (2002) (internal quotation marks and citation omitted). Accordingly, "Congress must be presumed to draft limitations periods in light of this background principle." Id. at 49-50.

To the extent that legislative history is relevant, it supports recognition of equitable tolling of § 815(c)(2). The Senate Committee Report on the statute states:

> While [the 60-day] time-limit is necessary to avoid stale claims being brought, it should not be construed strictly where the filing of a complaint is delayed under justifiable circumstances. Circumstances which could warrant the extension of the time-limit would include a case where the miner within the 60-day period brings the complaint to the attention of another agency or to his employer, or the miner fails to meet the time limit because he is misled as to or misunderstands his rights under the Act.

S. Rep. 95-181, 95th Cong., 1st Sess. 36 (1977). The non-exclusive list of justifiable circumstances recognized by the Commission echoes the legislative history. According to the Commission, "justifiable circumstances includ[e] ignorance, mistake, inadvertence, and excusable neglect." Perry, 18 FMSHRC at 1921-22.

To be sure, the Commission's interpretation of the Mine Act also requires the consideration of unfairness to the mine operator arising from hearing an untimely claim. If a miner's claim is so stale that hearing it would result in material legal prejudice to the mine operator, it may be dismissed even if the

miner demonstrates justifiable circumstances.  Id. at 1922.  Such consideration of the mine operator's interests, however, is proper in weighing the equities.  We conclude that the Commission's equitable-tolling rule is a reasonable construction of § 815(c)(2).

*C.  The ALJ's Decision*

The ALJ granted Jacobs Ranch's motion to dismiss.  He began by reciting Commission precedent holding that "a 'miner's late filing of a discrimination complaint may be excused on the basis of justifiable circumstances, including ignorance, mistake, inadvertence and excusable neglect.'"  R. at 199 (quoting Perry, 18 FMSHRC at 1921-22).  The ALJ saw no such excuse here, finding that Complainant's deposition and her prior filing of complaints with the MSHA demonstrated that she "was well aware of the 60-day period for filing discrimination complaints" and "was fully aware of her section [815(c)] rights."  R. at 199-200.  The ALJ also rejected as "inconsistent with the facts" Complainant's argument that she failed to timely file her complaint due to her fear of retaliation against her husband and son.  Id. at 200.  The ALJ wrote:

> [Complainant] had filed several other section [815(c)] complaints while her husband Emmett was employed at the mine.  At her deposition, [she] admitted that Emmett had not been threatened in any way after she filed those discrimination complaints.  She did not express any specific reasons why she believed that Emmett would suffer any adverse action by the company as a result of her complaint, other than the fact that she no longer worked at the mine.

In addition, her son did not apply for a job at the mine until after she filed her discrimination complaint in this case.

Id. (internal citations omitted). The ALJ reasoned:

A delay *may* be justified upon a showing that the fear of serious reprisal can be supported by facts. Speculation that the relative may be the butt of jokes or teasing is not enough. . . . A vague, unsubstantiated concern that Emmett would replace her as a victim of harassment and intimidation is an insufficient justification for the knowing delay.

Id. (internal quotation marks omitted). Furthermore, the ALJ found that Jacobs Ranch had demonstrated material legal prejudice arising from Petitioner's untimely filing because of the relocation of two essential witnesses to Australia and Complainant's inability to recall relevant facts.

The ALJ concluded that Complainant's complaint was "excessively stale" because "[t]he reasons set forth for the delay do not demonstrate any justifiable circumstance for the delay, such as excusable neglect, and Jacobs Ranch suffered at least some degree of legal prejudice because of the delay." Id. at 201.

*D. Review of the ALJ's Decision*

Before addressing Complainant's challenge to the ALJ's ruling, we note the ambiguous procedural posture of the ruling. It is unclear whether the ALJ treated Jacobs Ranch's motion as a motion to dismiss under 29 C.F.R. § 2700.10 or as a motion for summary decision under 29 C.F.R. § 2700.67, which is essentially the same as a motion for summary judgment under Federal Rule of Civil Procedure

-12-

56.  Complainant argues that the ALJ must have treated the motion as a motion for summary decision because he considered evidence in the record rather than simply assuming the truth of the allegations of her complaint.  She therefore contends that we should review the ALJ's ruling as we review a summary judgment.  We may assume that Complainant is correct in this regard.  Characterizing the ruling as a summary decision, however, does not help Complainant.  First, Complainant does not claim to have been prejudiced by the ALJ's examination of material outside the pleadings (indeed, she invited the ALJ to look to outside materials).  Second, as we shall explain, there are no disputed issues of material fact; so a summary decision, like a summary judgment, was appropriate.  See 29 C.F.R. § 2700.67 ("A motion for summary decision shall be granted only if the entire record . . . shows:  (1) That there is no genuine issue as to any material fact; and (2) That the moving party is entitled to summary decision as a matter of law."); Simms v. Oklahoma, 165 F.3d 1321, 1326 (10th Cir. 1999) (standard for summary judgment).

Turning to the merits of the ALJ's ruling, Complainant contends that the ALJ erred in granting Jacobs Ranch's motion because "[r]eviewed de novo, the record reveals a genuine dispute of material fact whether [Complainant] refrained from filing her complaint in a timely manner because she held a good faith, reasonable fear that her husband and son would be subjected to retaliation."  Aplt.

-13-

Br. at 32. This contention has both a legal component—that a reasonable fear of retaliation can justify an untimely filing—and a factual component—that she had such a reasonable fear in this case. We begin with the legal component.

To support her contention that a reasonable fear of retaliation would justify delay in filing a complaint, Complainant cites Allen v. UNC Mining and Milling, 5 FMSHRC 30 (1983). That decision is not entitled to deference, however, because the Commission did not review the ALJ's decision, and the decision is therefore not binding precedent under the Commission's rules, see 29 C.F.R. § 2700.72 ("An unreviewed decision of [an ALJ] is not a precedent binding upon the Commission."). We agree with the following observation:

> [I]nitial decisions by ALJs . . . often are not treated as binding precedent by the agency itself. In other words, they are not regarded as legally binding inside the agency in future proceedings raising the same issue. Such decisions also do not qualify for Chevron deference Indeed, it would be extremely odd to give ALJ decisions greater legal force in court than they have within the agency itself.

Thomas W. Merrill & Kristin E. Hickman, Chevron's Domain 89 Geo. L.J. 833, 908 (2001) (footnote omitted).

Nevertheless, we will assume that equitable tolling can be based on a reasonable fear of retaliation. Indeed, the ALJ did not categorically reject the possibility of such an exception to the 60-day filing requirement. He merely held that even if recognition of such an exception is a permissible construction of the Mine Act, it would not apply on the evidence in this case. The ALJ said, "A

-14-

delay *may* be justified upon a showing that the fear of serious reprisal can be supported by facts." R. at 200. We read the ALJ's statement to mean that there must be facts in the record from which one could conclude that a miner's fear of serious reprisal is reasonable.

Where Complainant falls short is on the factual component of her argument—whether she had a reasonable fear of retaliation. As with any party claiming the benefit of equitable tolling of a limitations period, Complainant bore the burden of proving justifiable circumstances. See, e.g., Tiberi v. Cigna Corp., 89 F.3d 1423, 1428 (10th Cir. 1996) (applying New Mexico law); Aldrich v. McCulloch Props., Inc., 627 F.2d 1036, 1041 n.4 (10th Cir. 1980) ("While the statute of limitations is an affirmative defense, when the dates given in the complaint make clear that the right sued upon has been extinguished, the plaintiff has the burden of establishing a factual basis for tolling the statute."); United States v. All Funds Distributed To, or on Behalf of Weiss, 345 F.3d 49, 55 (2d Cir. 2003) ("A party seeking to benefit from the doctrine [of equitable tolling] bears the burden of proving that tolling is appropriate . . . ."); United States v. Marolf, 173 F.3d 1213, 1218 n.3 (9th Cir. 1999) (same); Justice v. United States, 6 F.3d 1474, 1479 (11th Cir. 1993) (same); see also Phillips v. Donnell, 216 F.3d 508, 511 (5th Cir. 2000) (habeas case, noting that "[i]n other areas of federal law, the party seeking to establish [equitable] tolling typically carries that burden.").

Complainant admits that she was required to prove that her fear of retaliation against her husband was both genuine and reasonable. In our view, she failed to satisfy that requirement.

In Complainant's brief in opposition to Jacobs Ranch's motion, the section on justifiable circumstances cites only to a declaration by Complainant attached to the brief. The declaration contains statements to the effect that (1) after being fired she "discussed with [her] husband [Emmett] whether [she] should file a discrimination complaint" and Emmett "told [her] that he felt that Kennecott would harass and intimidate him and would make his life 'hell'" and (2) she "was also very concerned that if [she] filed a discrimination complaint . . . [her] son, Josh would not be able to get a job at Jacobs Ranch . . . ." R. at 155. She included no evidence providing any basis for Emmett's fear other than his own speculation. Although her assertions might create a genuine issue of material fact as to whether her fear of retaliation against Emmett and Josh was genuine, they do not establish that it was reasonable.

Complainant's deposition testimony also fails to support a finding of reasonableness. She admitted that she had no knowledge of Emmett's job ever having been threatened because of her activities after Jacobs Ranch purchased the Mine. She also admitted that Josh never applied for a position at the Mine until after she filed her untimely discrimination complaint. Her only testimony that

-16-

Emmett was "retaliated against" by a Jacobs Ranch employee following her dismissal was that his supervisor "would come up and ask [Emmett] how [or what] I was doing." R. at 92. As the ALJ observed, Complainant pointed only to "speculation" and a "vague, unsubstantiated concern that Emmett would 'replace her as a victim of harassment and intimidation,'" R. at 200.

In short, Complainant did not "present[] facts such that a reasonable [factfinder] could find in [her] favor." Simms, 165 F.3d at 1326. Because we agree with the ALJ that Complainant did not provide justification for her untimely filing, we need not address whether Jacobs Ranch suffered material legal prejudice.

## III. CONCLUSION

We AFFIRM the ALJ's dismissal of the complaint on grounds of untimeliness. The ALJ correctly concluded that there was no genuine issue of material fact as to the reasonableness of Complainant's fear of retaliation against Emmett and Josh.