FILED
United States Court of Appeals
Tenth Circuit

November 15, 2012

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

CORDERO MINING LLC,

      Petitioner,

v.

SECRETARY OF LABOR on behalf
of CINDY L. CLAPP; FEDERAL
MINE SAFETY AND HEALTH
REVIEW COMMISSION,

      Respondent.

No. 12-9502

**ON PETITION FOR REVIEW OF THE DECISION BY THE
FEDERAL MINE SAFETY AND HEALTH REVIEW COMMISSION
MSHR-1:WEST 2010-1773-D**

M. Robin Repass, (Laura E. Beverage and Kristin R.B. White of Jackson Kelly,
PLLC, with her on the briefs), Denver, Colorado, for Petitioner.

Nancy E. Steffan, (M. Patricia Smith, Solicitor of Labor, Heidi W. Strassler,
Associate Solicitor, W. Christian Schumann, Counsel, Appellate Litigation, of the
U.S. Department of Labor, Office of the Solicitor, on the brief), Washington, D.C.
for Respondent.

Before **KELLY**, **BALDOCK**, and **EBEL**, Circuit Judges.

**KELLY**, Circuit Judge.

Cordero Mining LLC ("Cordero") seeks review of a Decision and Order of Administrative Law Judge ("ALJ") Thomas P. McCarthy issued on December 5, 2011, finding that Cordero violated § 105(c) of the Federal Mine Safety and Health Act of 1977 (the "Act") in terminating Cindy L. Clapp. Cordero requests that judgment be entered in its favor and that this court (a) vacate the ALJ's finding that Cordero violated § 105(c) of the Act, (b) vacate the ALJ's orders that Ms. Clapp be reinstated, that she be paid back-pay, that Cordero's files remove reference to her termination, and that a copy of the decision and order be posted, and (c) vacate the penalties imposed by the ALJ. Pet. Br. at 57-58. The Federal Mine Safety and Health Review Commission denied review of the ALJ's decision. We have jurisdiction under 30 U.S.C. § 816(a)(1), and deny the petition for review and affirm the order of the ALJ.

## Background

The Cordero mine is an open-pit, surface coal mine near Gillette, Wyoming. Pet. Br., Exh. 1, at 3. Ms. Clapp was employed by Cordero for twenty-eight years, during which time she was consistently lauded for safe operations. Id. at 4. At the time of her discharge, Ms. Clapp was a level 6 shovel operator, meaning she received the highest hourly wage and was responsible for overseeing operations for a single "run" within the larger mine. Id.

Beginning in early 2009, Ms. Clapp lodged several safety complaints with

- 2 -

Cordero. In February and July 2009, Ms. Clapp voiced concerns about newly-installed GPS screens blocking visibility inside vehicles. Id. at 8-9, 16-18. In March or April 2009, Ms. Clapp complained about unmanned vehicles being parked behind her shovel. Id. at 10. Throughout 2009, Ms. Clapp voiced concerns about needing water trucks in her run because dust was decreasing visibility to dangerous levels. Id. at 19-20.

Most relevant, Ms. Clapp expressed concerns about overloaded trucks returning to the run to dump their loads. As background, in late 2008 and early 2009, Cordero equipped its trucks with an updated pay load monitoring system, which calculated the weight of the coal load. Id. at 5. On March 1, 2010, Cordero installed governors–or speed regulators–on its trucks. Id. at 20. The governors prevented a truck from traveling at greater than five miles per hour once the truck registered as overloaded. Id. At a meeting held on March 2, 2010, Dave Robinson, a supervisor for Ms. Clapp's team, told the team about the governors and instructed them on the new policy–if the governor was triggered, they should turn the truck around and dump it back at the coal face. Id.

Beginning that night and continuing until March 12, 2010–just six days before she was terminated–Ms. Clapp expressed concerns about the new policy to various Cordero employees, including Robinson, mine manager Joe Vaccari, Rotating Operations Supervisor ("ROS") Terry Oistad, and ROS Gerald Fischer. Ms. Clapp asserted that having trucks return to the run to unload was dangerous

- 3 -

based on uneven terrain and the potential for truck congestion. Id. at 22-24. Ms. Clapp was called into meetings–one in particular on March 10, 2010–at which she alleges she was berated and chastised for continuing to voice safety concerns. Id. at 26-34. On the morning of March 11, 2010, Ms. Clapp called her supervisors to let them know she was taking a "floater" day and would not be coming into work. Id. at 34. Cordero alleges that Ms. Clapp knew a meeting was scheduled for that day. Id. at 35. Ms. Clapp ultimately was terminated on March 18, 2010 "due to [her] insubordination towards leadership and for other legitimate business reasons." Id. at 38-39. On April 29, 2010, the Secretary of Labor filed a Complaint of Discrimination, alleging that Cordero terminated Ms. Clapp for exercising her statutory rights to make safety complaints. Id. at 1. On June 24, 2010, Ms. Clapp was economically reinstated pending a final decision. Id. Following a hearing, ALJ McCarthy issued a 66-page Decision and Order, in which he found Ms. Clapp's termination to be in violation of § 105(c) of the Act. Id. at 64, 66. The Order reinstated Ms. Clapp and awarded her full back pay for the period between her termination and economic reinstatement. Id. at 65. The ALJ also levied a civil penalty of $40,000 against Cordero, which was twice the amount requested in the Complaint. Id.

Cordero filed a Petition for Discretionary Review with the Commission. Pet. Br., Exh. 4. The Commission denied review, and the Order became final. Id. We have jurisdiction under 30 U.S.C. § 816(a)(1).

- 4 -

We review the ALJ's factual findings to determine if they are supported by "substantial evidence." 30 U.S.C. § 816(a)(1); Olson v. Fed. Mine Safety & Health Review Comm'n, 381 F.3d 1007, 1011 (10th Cir. 2004). Substantial evidence is that which a "reasonable mind might accept as adequate to support the conclusion reached by the decisionmaker." Plateau Mining Corp. v. Fed. Mine Safety & Health Review Comm'n, 519 F.3d 1176, 1194 (10th Cir. 2008) (quoting Zoltanski v. FAA, 372 F.3d 1195, 1200 (10th Cir. 2004)). Under this deferential standard of review, "we may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Id. We must, however, "'take into account whatever in the record fairly detracts from [the] weight' of the evidence that supports the finding." Id. (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)). Moreover, "credibility resolutions deserve great weight 'to the extent they are based on testimonial evidence of live witnesses and the hearing judge has had the opportunity to observe their demeanor.'" Webco Indus., Inc. v. NLRB, 217 F.3d 1306, 1311 (10th Cir. 2000) (citation omitted). We review the ALJ's legal conclusions de novo. Olson, 381 F.3d at 1011.

Section 105(c) of the Act prohibits discrimination against any miner who has "made a complaint under or related to this chapter, including a complaint . . . of an alleged danger or safety . . . violation." 30 U.S.C. § 815(c)(1). In bringing

a complaint under § 105(c), a miner must first establish a prima facie case of discrimination by proving that (1) she engaged in a protected activity, and (2) that the adverse action complained of was motivated in any part by that activity. Pasula v. Consolidation Coal Co., 2 FMSHRC 2786, 2799 (Oct. 14, 1980), rev'd on other grounds sub nom., Consolidation Coal Co. v. Marshall, 663 F.2d 1211 (3rd Cir. 1981). "The mine operator may rebut the prima facie case by showing either that no protected activity occurred or that the adverse action was in no part motivated by protected activity." Pendley v. Fed. Mine Safety & Health Review Comm'n, 601 F.3d 417, 423 (6th Cir. 2010) (citation omitted). If the operator cannot rebut the prima facie case, it may defend affirmatively by proving that it was also motivated by unprotected activity and would have taken the adverse action for the unprotected activity alone. Id.

Cordero first challenges the ALJ's finding that Ms. Clapp engaged in protected activity. Pet. Br. at 22. Specifically, Cordero contends that the ALJ ignored evidence in the record that Ms. Clapp's complaints stemmed from concerns about productivity instead of safety. Id. at 25-27. We disagree, and find substantial evidence in support of the ALJ's findings. In concluding that Ms. Clapp engaged in protected activity, the ALJ described seven incidents in March 2010 when Ms. Clapp raised safety concerns about turning around and dumping overloaded coal trucks back at the coal face. Pet. Br., Exh. 1, at 45-46. The evidence relied upon by the ALJ fully supports the conclusion. Cordero is asking

this court to disregard the considerable evidence (which the ALJ credited) that Ms. Clapp repeatedly expressed a reasonable and good-faith belief that the practice was unsafe. It is apparent that management did not share the same view, but we cannot second guess the ALJ as long as his findings are supported by substantial evidence. See Plateau Mining Corp., 519 F.3d at 1194. Therefore, we reject Cordero's first argument.

On this first question of protected activity, Cordero also contends that the ALJ erred as a matter of law by considering time-barred conduct. Pet. Br. at 31. The Act provides that a miner must file a complaint "within 60 days after such violation occurs." 30 U.S.C. § 815(c)(2). The Secretary filed the Complaint on April 29, 2010. As a result, any conduct prior to March 1, 2010, is outside the relevant period. We acknowledge that the ALJ's report discusses activity prior to March 1, 2010, but we find substantial evidence of protected activity within the relevant sixty-day period. Thus, we need not address Cordero's second argument.

Cordero next challenges the ALJ's finding that Ms. Clapp was terminated for her protected activity. Pet. Br. at 34. Cordero argues that substantial evidence shows that Ms. Clapp was terminated for insubordination instead. Id. Once again, we disagree. The ALJ reviewed the evidence in the record from which a court could infer Cordero fired Ms. Clapp for her protected activity, i.e. knowledge of the protected activity, animus, temporal proximity, and disparate treatment. Pet. Br., Exh. 1, at 47-52. The ALJ then evaluated Cordero's

allegations of insubordination–that Ms. Clapp failed to attend a March 11 meeting–and found them to be pretext. Id. at 53-59. Here, the ALJ made several credibility determinations in deciding to believe the testimony of Ms. Clapp regarding the alleged March 11th meeting instead of Fischer, and these decisions are entitled to deference. See Webco Indus., Inc., 217 F.3d at 1311. Cordero argues that the ALJ abused his discretion in construing the facts in the Secretary's favor, Pet. Br. at 38, but that plainly is the prerogative of a trier of fact. Therefore, we reject Cordero's third argument.

On similar grounds, Cordero contends that the ALJ erred as a matter of law in rejecting Cordero's "legitimate business reason" for firing Ms. Clapp. Pet. Br. at 42-46. We find this point restates Cordero's previous argument–that the ALJ should have believed Cordero terminated Ms. Clapp for insubordination–and we reject this claim as well. As discussed above, the ALJ was in the best position to assess the credibility of Cordero's witnesses and proffered reasons for termination. We find no reason to second-guess these determinations.

Cordero specifically challenges the ALJ's finding that Ms. Clapp suffered disparate treatment and was disciplined more harshly than other employees. Pet. Br. at 46-49. Cordero argues that substantial evidence shows Ms. Clapp was treated more favorably than other employees. Id. at 47. As an initial matter, we disagree with Cordero's portrayal of the record with respect to how employees were disciplined. However, we need not address this point in full because a miner

does not have to show every type of indirect evidence to make out a prima facie case of discrimination. See Chacon v. Phelps Dodge Corp., 3 FMSHRC 2508, 2513 (Nov. 13, 1981) (finding a prima facie case of discrimination "without a showing of disparate treatment"). We find adequate support for the ALJ's other findings that Cordero terminated Ms. Clapp because of her protected activity.

Cordero's final challenge to the ALJ's finding of discrimination is that the ALJ's factual inferences based on credibility determinations are not supported by substantial evidence. Pet. Br. at 49-53. We reject this argument because, as discussed above, "credibility resolutions deserve great weight." Webco Indus., Inc., 217 F.3d at 1311. Here, we find no reason to disrupt the ALJ's conclusion that Ms. Clapp (1) raised safety concerns to supervisors, and (2) believed she had permission to stay home from work on March 11, 2010.

Cordero also challenges the ALJ's decision to award full back-pay to Ms. Clapp. Pet. Br. at 53-54. Cordero contends that the ALJ ignored substantial evidence that Ms. Clapp failed to mitigate her damages, specifically that Ms. Clapp only applied for one job after being terminated. Id. at 54. We disagree.

A claimant is entitled to full back pay so long as she makes a "reasonable and good faith effort" to mitigate damages and find new employment. Minshall v. McGraw Hill Broad. Co., 323 F.3d 1273, 1287 (10th Cir. 2003) (citing Spulak v. K Mart Corp., 894 F.2d 1150, 1158 (10th Cir. 1990)). The "burden is on the employer to establish that the claimant did not exercise reasonable diligence." Id.

Cordero argues that Ms. Clapp needed to apply for more than one job to make reasonable efforts to mitigate damages. The ALJ rejected this claim, and in doing so, found that Cordero failed to meet its burden. Pet. Br., Exh. 1, at 60. The ALJ then determined that Ms. Clapp had reasonably searched for another job. Id. This decision is supported by substantial evidence.

Finally, Cordero argues that the civil penalty imposed is excessive and not supported by substantial evidence. Pet. Br. at 54-57. An ALJ is authorized to determine do novo the amount of the civil penalty, as long as the ALJ considers the following six criteria:

> [(1)] the operator's history of previous violations, [(2)] the appropriateness of such penalty to the size of the business of the operator charged, [(3)] whether the operator was negligent, [(4)] the effect on the operator's ability to continue in business, [(5)] the gravity of the violation, and [(6)] the demonstrated good faith of the person charged in attempting to achieve rapid compliance after notification of a violation.

30 U.S.C. § 820(i); see Walker Stone Co. v. Sec'y of Labor, 156 F.3d 1076, 1085-86 (10th Cir. 1998); Windsor Coal Co. v. Sec'y of Labor, 166 F.3d 337, 1998 WL 879062, at *5 (4th Cir. July 31, 1998). The ALJ found the Secretary's proposed penalty of $20,000 inadequate to effectuate the "deterrent purpose" of the Act, and doubled the penalty to $40,000. Pet. Br., Exh. 1, at 62. We review for an abuse of discretion. B.L. Anderson, Inc. v. Fed. Mine Safety & Health Review Comm'n, 668 F.2d 442, 444 (8th Cir. 1982). "A penalty assessment which is not supported by substantial evidence or which is legally erroneous must be reversed

on appeal." Walker Stone Co., 156 F.3d at 1086.

Cordero contends that the ALJ ignored certain statutory factors, and that substantial evidence does not support the ALJ's finding that (1) Ms. Clapp's termination had a chilling effect on other miners, and (2) Cordero did not act in good faith. Pet. Br. at 55-56. We disagree. The ALJ considered each of the six statutory elements relating to civil penalties, and ultimately focused on the second, third, fifth, and sixth factors. Here, the ALJ found that Cordero was a large mining company, that Cordero's managers were negligent, that discharging Ms. Clapp was a grave violation that had a "chilling effect" on other miners, and that Cordero did not act in good faith. Pet. Br., Exh. 1, at 62-63. We find substantial evidence for each of these factual findings. Moreover, we find the ALJ adequately explained his decision to assess a penalty greater than the Secretary had requested.

Thus, after reviewing the record as a whole, we find substantial evidence to support the ALJ's finding of discrimination and decision to award full back pay. In addition, the penalty imposed was not excessive or an abuse of discretion. Cordero's petition for review is denied and the decision and order of the ALJ is AFFIRMED.