Per Curiam
This case comes before the court on a petition for review of the Federal Mine Safety and Health Review Commission's order affirming the imposition of civil penalties on Petitioner American Coal Company. It is
ORDERED AND ADJUDGED that the order of the Federal Mine Safety and Health Review Commission be affirmed.
American Coal Company challenges a $ 43,200 penalty assessment imposed on it for five significant and substantial violations of mine safety regulations. The Company argues that the Commission failed to enforce the burden of proof, imposed an improperly high penalty, and otherwise failed to justify the penalty assessed. Finding no error in the final decision of the Commission, we deny the petition for review.
The Federal Mine Safety and Health Act of 1977 ("Mine Act"), 30 U.S.C. § 801 et seq. , provides distinct roles for the Mine Safety and Health Administration and the Federal Mine Safety and Health Review Commission ("Commission"). The Mine Safety and Health Administration "inspects mines, issues citations for safety violations, and proposes civil penalties, all on behalf of the Secretary of Labor" ("Secretary"). Lone Mountain Processing, Inc. v. Secretary of Labor , 709 F.3d 1161, 1162 (D.C. Cir. 2013). The Commission, in contrast, exercises "the type of nonpolicymaking adjudicatory powers typically exercised by a court in the agency-review context." Secretary of Labor v. Twentymile Coal Co. , 456 F.3d 151, 161 (D.C. Cir. 2006) (formatting altered). To state it more simply, the Secretary "plays the roles of police and prosecutor, and the Commission plays the role of judge." Lone Mountain Processing , 709 F.3d at 1162.
When an "authorized representative" of the Secretary finds a violation of the Mine Act or of "any mandatory health or safety standard, rule, order, or regulation promulgated pursuant to [the Mine Act]," 30 U.S.C. § 814(a), the Secretary may propose a civil penalty, id . § 815(a). Six statutory factors guide the Secretary's enforcement discretion in deciding whether to assess a penalty and, if so, in what amount. Those factors are: (1) "the operator's history of previous violations"; (2) "the appropriateness of such penalty to the size of the business of the operator charged"; (3) "whether the operator was negligent"; (4) "the effect on the operator's ability to continue in business"; (5)
*725 "the gravity of the violation"; and (6) "the demonstrated good faith of the operator charged in attempting to achieve rapid compliance after notification of a violation." Id . § 815(b)(1)(B). The statute is explicit that, in proposing penalties, "the Secretary may rely upon a summary review of the information available to him and shall not be required to make findings of fact concerning the above factors." Id . § 820(i).
The Secretary has adopted regulations that guide his exercise of discretion. As relevant here, once the Secretary decides to propose a penalty, he faces a fork in the road. He may propose penalties according to the "regular" assessment formula provided in 30 C.F.R. § 100.3. That regimented formula mathematically converts findings regarding the six statutory factors into predetermined dollar values. 30 C.F.R. § 100.3. Alternatively, the Secretary may propose a "special assessment." Id . § 100.5. That approach affords the Secretary greater latitude in deciding what penalty to propose, requiring only that the Secretary base the proposed penalty on his own weighing of the six statutory criteria. Id . § 100.5(a), (b). The added flexibility of the special-assessment model allows the Secretary to propose penalties in amounts that are greater or less than the regular-assessment formula would yield.
If a mine operator contests the Secretary's penalty proposal, "the Commission shall afford an opportunity for a hearing * * * and thereafter shall issue an order, based on findings of fact, affirming, modifying, or vacating the Secretary's citation, order, or proposed penalty, or directing other appropriate relief." 30 U.S.C. § 815(d) ; see also id . § 820(i) (endowing the Commission with "authority to assess all civil penalties provided in [the Act]"). When deciding what penalty to impose, the Commission "shall consider" the same six statutory factors that informed the Secretary's penalty proposal. Id. § 820(i); see also 29 C.F.R. § 2700.30(a) (requiring decisions to "contain findings of fact and conclusions of law on each of the statutory criteria"). The Commission analyzes those factors and makes its decision independently, with no obligation to follow the Secretary's penalty proposal. 29 C.F.R. § 2700.30(b) ; Sellersburg Stone Co. v. Federal Mine Safety & Health Review Comm'n , 736 F.2d 1147, 1152 (7th Cir. 1984).
This case concerns five citations the Secretary issued to American Coal Company for safety violations at the Company's mines in Galatia, Illinois. For those alleged violations, the Secretary proposed special assessments totaling approximately $ 70,000. See Secretary of Labor v. American Coal Co. , 35 FMSHRC 3077, 3105, 3111, 3115, 3119, 3122 (2013). The Company sought administrative review of those penalties.
Following a hearing, an administrative law judge imposed a lower penalty than the Secretary had proposed. American Coal , 35 FMSHRC at 3123. In doing so, the ALJ explained that the Secretary's choice whether to propose a regular penalty or a special assessment had no bearing on the Commission's independent calculation of the appropriate penalty amount. Id. at 3110. Instead, the ALJ and, ultimately, the Commission are "guided in [their] final determinations by the polestar" of the six statutory factors. Id . (citing 30 U.S.C. § 820(i) ). After making factual findings and applying the statutory factors, the ALJ ordered the Company to pay a penalty of $ 43,200. American Coal , 35 FMSHRC at 3123.
On review, the Commission ruled that it could not be certain whether the ALJ had "used the Secretary's special assessment as a starting point," instead of discharging *726 his "duty * * * to make a de novo assessment based upon [his] review of the record." Secretary of Labor v. American Coal Co. , 38 FMSHRC 1987, 1990 (2016). "In order to assure the independence of the assessment," the Commission remanded the case "for reconsideration and further explanation." Id .
On remand, the ALJ reaffirmed his original assessments. Secretary of Labor v. American Coal Co. , 38 FMSHRC 2612, 2622 (2016). The ALJ was explicit that he "did not use and has not used the Secretary's proposed specially assessed penalties as a baseline or starting point," nor did he "intentionally utilize any uniform across-the-board reduction formula in arriving at [his] individual penalty conclusions." Id . at 2615, 2617 (emphasis omitted). The ALJ then explained again his penalty determinations with reference to each of the six statutory factors and provided reasons for departing from the Secretary's recommendations. Id . at 2617-2622. The ALJ's key objective was to impose a penalty that would serve as a deterrent, given the Company's "significant history of violations" and the significant and substantial nature of the violations. Id . at 2617-2618. He also gave "great weight" to the Company's large size and ability to shoulder a penalty while continuing operations. Id . at 2617. All things considered, a $ 43,200 penalty was what he found necessary "to serve as an effective enforcement tool and discourage further violations." Id .
On the Company's second appeal, the Commission was evenly divided. That left the ALJ's penalty decision "to stand as if affirmed." Secretary of Labor v. American Coal Co. , 40 FMSHRC 1011, 1011 (2018) (citing Secretary of Labor v. Pennsylvania Elec. Co. , 12 FMSHRC 1562, 1565 (1990) ("Because a majority of the Commission did not vote to reverse the decision of the administrative law judge, his decision stands in full force, as if affirmed.")).
Because the ALJ's decision is, as matter of law, the Commission's final decision in this case, see 30 U.S.C. § 815(d), we review the ALJ's legal determinations de novo and factual determinations for substantial evidence, id. U.S.C. § 816(a)(1); Black Beauty Coal Co. v. Federal Mine Safety & Health Review Comm'n , 703 F.3d 553, 558 (D.C. Cir. 2012). And we review the ALJ's penalty calculation for an abuse of discretion. See Cordero Mining LLC v. Secretary of Labor , 699 F.3d 1232, 1238 (10th Cir. 2012).
The Company argues that the penalty assessment is erroneous because the ALJ (i) failed to require the Secretary to prove the grounds for his proposed penalty by a preponderance of the evidence, (ii) departed from regulations governing the Secretary's internal computation of a proposed penalty, and (iii) insufficiently explained the basis for his final penalty assessment. None of those arguments prevail.
First , the Company argues that the ALJ committed reversible legal error by failing to require the Secretary to prove his proposed special assessment by a preponderance of the evidence. The starting premise for that argument rests on solid ground. The standard of proof in Mine Act hearings is the "traditional preponderance-of-the-evidence standard" that the Administrative Procedure Act contemplates. Steadman v. SEC , 450 U.S. 91, 102, 101 S.Ct. 999, 67 L.Ed.2d 69 (1981) ; see also 30 U.S.C. § 815(d) (incorporating this standard). But the argument gets no further traction because it fundamentally misunderstands the ALJ's task.
What the Mine Act requires is that the Secretary prove "the alleged violation by a preponderance of the evidence." Secretary of Labor v. Excel Mining, LLC , 35 *727 FMSHRC 2511, 2512 (2013) (emphasis added). That is, the Secretary bears the burden of proving the facts making out a violation of law. The ALJ expressly held the Secretary to this burden. See American Coal , 35 FMSHRC at 3099-3100 (first citation), 3105 (second citation), 3112 (third citation), 3115 (fourth citation), 3119 (fifth citation); see also id . at 3107 (recognizing that "it is the Secretary's burden, under the Mine Act, to prove each alleged violation by a preponderance of the evidence"). The Company, in fact, does not dispute that the Secretary met this burden, and does not even seek review of the findings of violations.
Where the Company goes wrong is in trying to extend that burden of proof to the Secretary's suggested penalty amount. But once violations are found, the determination of the appropriate remedy is left to the Commission's independent, de novo judgment. Secretary of Labor v. Sellersburg Stone Co. , 5 FMSHRC 287, 291 (1983) (The Commission's penalty assessment is "a de novo determination based on the six statutory criteria" set forth in 30 U.S.C. § 820(i).). The Secretary's proposed penalty is just that: a proposal. Nothing more. What penalty is ultimately imposed will be determined by the Commission applying the statutory factors. What internal remedial enforcement judgments the Secretary might or might not have made in suggesting a penalty amount are beside the point.
By the same token, the Secretary is under no obligation to "prove" his decision to suggest a special assessment rather than a regular assessment. That decision is just part and parcel of the Secretary's internal deliberations about what penalty to recommend . In fact, the entire regulatory framework distinguishing between so-called "special" and "regular" assessments applies only to guide the Secretary. It "do[es] not extend to the independent Commission," and it is "not binding in any way in Commission proceedings." Mach Mining v. Secretary of Labor , 809 F.3d 1259, 1264 (D.C. Cir. 2016) (internal quotation marks omitted); see also 29 C.F.R. § 2700.30.
The Company points to Coal Employment Project v. Dole , in which this court observed that the Secretary's special-assessment regulation was "designed for particularly serious or egregious violations." 889 F.2d 1127, 1129 (D.C. Cir. 1989). But that statement referred to a prior version of the special-assessment regulation. Id . (citing 47 Fed. Reg. 22,292, 22,296 (May 21, 1982) ) (providing that the Secretary should consider imposing a special assessment for "[v]iolations involving an extraordinarily high degree of negligence or gravity or other unique aggravating circumstances"). The Secretary has since removed that language. See Criteria and Procedures for Proposed Assessment of Civil Penalties, 72 Fed. Reg. 13,592, 13,646 (March 22, 2007) (superseding the prior regulation).
Anyhow, even were it still applicable, that language spoke only to the circumstances in which the Secretary would propose a special assessment. Nothing in the regulation obligated the Secretary to then go before the Commission and prove why he recommended the penalty he did. Under regulations past and present, the Secretary's proposal is nothing more than his own chosen litigating position. It is a party's argument; it is not a fact to be proven by evidence. The only penalty calculation that matters is the Commission's, which is independent of the Secretary's.
Second , the Company argues that the ALJ abused his discretion by imposing penalties that were higher than the Secretary's regulations would permit. That meets the same fate as the preceding argument.
*728 As noted, the Secretary's regulations regulate the Secretary; they "do not extend to the independent Commission." Mach Mining , 809 F.3d at 1263 ; see also Sellersburg Stone , 736 F.2d at 1152 (finding "no basis upon which to conclude that [the Secretary's] regulations also govern the Commission," and "refus[ing] to utilize [those regulations] to determine the reasonableness of the Commission's assessment"). The ALJ had no obligation to follow regulatory requirements that apply only to the Secretary's exercise of enforcement discretion. Mach Mining , 809 F.3d at 1263.
Third , the Company contends that the ALJ inadequately explained his reasons for computing the penalty amount. That is incorrect. The ALJ rationally explained his penalty assessments with reference to each of the six statutory factors, American Coal , 38 FMSHRC at 2618-2622, and he expressly disclaimed any use of "the Secretary's proposed specially assessed penalties as a baseline or starting point," id . at 2622. Rather than discounting the proposed penalties, he arrived at an independent determination of a penalty amount that would respond to the seriousness of the Company's violations and would deter future violations. Id . at 2616-2618. The ALJ also contrasted his judgment with that of the Secretary "[t]o the extent that there were any substantial deviations in [his] penalty amounts that would require a[n] * * * explanation." Id . at 2617. The ALJ need drill no deeper.
To be sure, the Commission's precedent seems to point in two directions. On the one hand, an ALJ's penalty "assessment must be independent, and the Secretary's proposal is not a baseline or starting point that the Judge should use [as] a guidepost for his/her assessment." American Coal , 38 FMSHRC at 1990. On the other hand, ALJs are supposed to provide "an explanation of any substantial divergence from the penalty proposal of the Secretary." Id . But all that matters here is that the ALJ satisfied both of those standards, provided an independent and reasoned basis for the penalty calculation, and supported all relevant factual determinations with substantial evidence.
For all of those reasons, we deny the petition for review.
The Clerk is directed to withhold issuance of the mandate until seven days after the resolution of any timely petition for rehearing or rehearing en banc. See FED. R. APP. P. 41(b) ; D.C. CIR. R. 41(a)(1).