# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued March 11, 2024              Decided June 4, 2024

No. 23-1239

TRENTON PALMER,
PETITIONER

v.

FEDERAL AVIATION ADMINISTRATION, ADMINISTRATOR AND
NATIONAL TRANSPORTATION SAFETY BOARD,
RESPONDENTS

On Petition for Review of an Order
of the National Transportation Safety Board

*Robert D. Schulte* argued the cause and filed the briefs for petitioner.

*Kathleen A. Yodice*, *Justine Harrison*, and *Raymond C. Speciale* were on the brief for *amici curiae* Aircraft Owners and Pilots Association, et al. in support of petitioner.

*Joy Park*, Senior Attorney, Federal Aviation Administration, argued the cause and filed the brief for respondents.

Before: HENDERSON and WILKINS, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: On November 24, 2019, appellant Trenton Palmer (Palmer) flew his plane at an altitude of less than 100 feet above ground level and within 500 feet of people, a house and other structures. The Federal Aviation Administration (FAA) investigated and charged Palmer with violating a regulation establishing minimum safe altitudes. After a full evidentiary hearing, an administrative law judge (ALJ) found that Palmer had violated the regulation. The National Transportation Safety Board (NTSB or the Board) affirmed.

Palmer petitions for review of the Board's decision, arguing that (1) the ALJ committed multiple prejudicial errors, (2) the complaint against him should have been dismissed and (3) we should overrule an earlier decision of our Court. As detailed *infra*, we deny Palmer's petition.

## I.  BACKGROUND

Palmer is an experienced private pilot and aircraft owner. On November 24, 2019, he flew his plane in a sparsely populated area near Reno, Nevada. Palmer conducted a "low inspection pass" during which he flew "within 500 feet of persons, vessels, vehicles, and structures, and at an altitude of 100 feet or less than 100 feet above ground level." J.A. 514 (footnotes omitted). Palmer's low flight was witnessed by three residents in the neighborhood: Gabriel Pena, Julia Pena (with her one-year-old son) and Russell Stanley.

The FAA investigated Palmer's low flight and found that he violated 14 C.F.R. § 91.119(a) and (c). Section 91.119 establishes minimum safe altitudes and provides that:

Except when necessary for takeoff or landing, no person may operate an aircraft below the following altitudes:

(a) Anywhere. An altitude allowing, if a power unit fails, an emergency landing without undue hazard to persons or property on the surface.

[...]

(c) Over other than congested areas. An altitude of 500 feet above the surface, except over open water or sparsely populated areas. In those cases, the aircraft may not be operated closer than 500 feet to any person, vessel, vehicle, or structure.

14 C.F.R. § 91.119. The FAA also found that Palmer violated 14 C.F.R. § 91.13(a), a residual charge that prohibits operating an aircraft "in a careless or reckless manner so as to endanger the life or property of another." Pursuant to statutory authority, the FAA Administrator suspended Palmer's pilot certificate for 120 days by issuing an order in the form of a complaint filed with the NTSB. *See* 49 U.S.C. § 44709(b)(1)(A). Palmer appealed the FAA order and the parties engaged in discovery and other pretrial litigation, after which the matter came before the ALJ for an evidentiary hearing in March and April 2022. At the outset of the hearing, Palmer moved to dismiss the FAA's complaint on the ground that the complaint failed to give fair notice of the charges. The ALJ denied the motion to dismiss after briefing.

In the proceedings, Palmer conceded that he flew within 500 feet of vessels, vehicles or structures and less than 100 feet above ground level. Palmer argued in his defense that he flew at a low altitude in order to assess the feasibility of a landing

site, making his flight "necessary for takeoff or landing" and therefore exempted by the prefatory language of Section 91.119. The intended landing site was a dirt runway in the backyard of Jared Likes, a friend of Palmer. Palmer did not land in Likes' backyard because he "found the landing site was not suitable for what [he] had expected and [] moved on." J.A. 396 (Palmer's testimony).

The evidentiary hearing included lay witness testimony from Palmer, Likes, the Penas and Stanley. Roy Speeg, an inspector and specialist with the FAA, testified and was qualified as an expert in general aviation, flight operations, general area of low flight operations and regulatory requirements under the FAA, but not short field takeoff or landing for the type of plane flown by Palmer. The FAA attempted to enter into evidence a video of Palmer's low flight captured by the Penas' outdoor security camera but the original video file was unavailable due to FAA error and the FAA proffered an iPhone recording of the original, that is, a video of the video made by Pena. The ALJ excluded the recorded video under the best evidence rule and excluded all testimony that relied on the video. Palmer sought dismissal of the case due to the destruction of the original video and the FAA's handling of evidence; the ALJ denied the motion because, although the FAA showed "negligence and carelessness" and "sloppiness on [sic] this investigation," there was "no proof that anything inappropriate occurred" and the video evidence was not necessary given other evidence in the record. J.A. 119-21.

The ALJ provided an Oral Initial Decision at the close of the hearing and found that Palmer violated Sections 91.119(a), (c), and 91.13(a). He found that Palmer did not prove the affirmative defense that the flight was necessary for takeoff or landing; Palmer had safer and more appropriate alternatives to evaluate the landing site than the low pass he conducted; and

the runway was not suitable for a landing under normal conditions so the exception to Section 91.119 did not apply under Board precedent. The ALJ mitigated Palmer's suspension from 120 days to 60 days.

Palmer appealed the ALJ's decision to the Board and the FAA cross-appealed the ALJ's mitigation of Palmer's suspension. On *de novo* review, the Board affirmed the ALJ's order and made the following findings: (1) the ALJ did not err in denying Palmer's motion to dismiss because the complaint satisfied notice pleading principles and Palmer was on notice that the prefatory language of Section 91.119 was at issue; (2) the ALJ did not err in finding Palmer's intended landing site was inappropriate because the finding was supported by record evidence and Board precedent; (3) the ALJ did not err in not dismissing the proceedings based on the video evidence destruction because he properly followed Board precedent; (4) Palmer's additional arguments were meritless, as the ALJ acted within his scope of authority and did not abuse his discretion. Throughout its opinion, the Board noted that Palmer failed to demonstrate how the ALJ's alleged errors caused him prejudice, a showing which is required for the Board to overturn an ALJ's evidentiary ruling. *See, e.g.*, *Adm'r v. Kolodziejczyk*, NTSB Order No. EA-5909, 2021 WL 5240239, at *19 (Oct. 4, 2021). As to the choice of sanction, the Board explained that under D.C. Circuit precedent, the ALJ can overturn the Administrator's sanction only if it is "unwarranted in law or without justification in fact." J.A. 560 (quoting *Pham v. Nat'l Transp. Safety Bd.*, 33 F.4th 576, 583 (D.C. Cir. 2022)). The Board reversed the ALJ's mitigation of the Administrator's sanction because the Administrator's selected sanction was supported by a reasonable explanation and there were no mitigating circumstances. This petition for review followed.

## II. ANALYSIS

We uphold a decision from the NTSB unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), or "unsupported by substantial evidence," 5 U.S.C. § 706(2)(E). *Huerta v. Ducote*, 792 F.3d 144, 153 (D.C. Cir. 2015).

Palmer raises a host of challenges to the ALJ's decision and to the NTSB's review of his case. We first address his arguments directed at the ALJ's decisionmaking at the hearing—namely, the interpretation of the regulation at issue, the assessment of Palmer's defense and the reliance on expert testimony. We then turn to Palmer's position that the complaint against him should have been dismissed because the FAA provided insufficient notice in the complaint and mishandled key evidence. We finally turn to Palmer's challenge to *Pham v. National Transportation Safety Board*, 33 F.4th 576 (D.C. Cir. 2022).

## A.

Palmer does not challenge the ALJ's finding that he flew at an altitude that did not allow a safe emergency landing and admitted at the hearing that he flew within 500 feet of a person, vessel, vehicle or structure, establishing *prima facie* violations of Section 91.119(a) and (c). Instead, his arguments on appeal as to the Section 91.119 violations turn on whether he proved his defense that the low flight was necessary for takeoff or landing.

First, Palmer argues that the ALJ misinterpreted and misapplied Section 91.119 by finding that his low flight was not necessary for landing. He relies on the prefatory language of Section 91.119, which exempts from liability low flights that

are "necessary for takeoff or landing," and argues that low passes to inspect off-airport landing sites are generally necessary. He points to expert witness Speeg's testimony that low passes are prudent for off-airport landing and the FAA's guidance document Off Airport Operations Guide, which advises pilots to conduct a low-level pass to check landing site conditions.

Palmer mischaracterizes the ALJ's holding and fails to identify any legal error. As the Board explained, the ALJ did not broadly hold that low flights are never necessary for off-airport landings but rather found based on the evidence that Palmer did not prove his defense that this particular low flight was necessary for landing. The Board reviewed the decision and concluded that the ALJ reasonably found that the low inspection pass was not necessary under these circumstances because Palmer had safer alternatives to inspect the landing site. We agree.

Palmer's argument relies on Speeg's general testimony and FAA guidance instructing that low flights are prudent in some conditions; he does not identify anything in the record undermining the ALJ's and the Board's conclusion that those conditions did not exist in his case. In fact, the evidence on which Palmer relies undermines his position. The FAA Off Airport Operations Guide (which in any event is not binding and does not control the Board's analysis) advises pilots to make at least three passes to assess a landing site at varying altitudes: first a high level pass to observe possible obstructions, then an intermediate pass to evaluate the site in greater detail and, finally, a low pass to check for dips and bumps on the ground. It is undisputed that Palmer made only one pass at a low level and thus did not follow the guidance. Palmer's low flight was not necessary, authorized or prudent; the flight therefore violated Section 91.119.

Next, Palmer argues that the ALJ erred by finding that his intended landing site was not suitable because the issue was withdrawn. At the hearing, Palmer's counsel asked about the suitability of the landing site and the FAA Administrator objected on relevancy grounds. The Administrator explained her view that the "appropriateness of the landing site is not an issue in this case" because Palmer testified that he had no intention of landing. J.A. 241. Palmer's counsel offered to withdraw the question based on the Administrator's position. But the ALJ thought the suitability issue was relevant because Palmer had testified that he made a low pass to determine whether the landing site was suitable and decided not to land only after evaluating the airfield. The ALJ allowed the question and answer and ultimately concluded that the landing site was not suitable under the circumstances. Palmer claims that the ALJ's consideration of the landing site suitability inappropriately reintroduced a factual question not at issue, amounting to an abuse of discretion and violation of his due process rights.

Palmer's argument lacks merit. As the NTSB found, the ALJ acted within his discretion and consistent with Board precedent in considering the suitability of the landing site. *See, e.g.*, *Adm'r v. Cobb*, 3 N.T.S.B. 98, 100, 1977 WL 22241, at *3, *aff'd*, 572 F.2d 202 (9th Cir. 1977). Palmer does not address this precedent and makes no effort to demonstrate how the NTSB erred in its final order. Moreover, the Board has long held that evidentiary rulings may be overturned "only after a party can show such a ruling prejudiced him or her." *Kolodziejczyk*, NTSB Order No. EA-5909, 2021 WL 5240239, at *19. Palmer does not explain how the ALJ, by allowing a question from his own counsel, caused him prejudice. Common sense suggests that the question—asked to establish Palmer's defense that the low flight was conducted for landing—could only *help* his case, not prejudice it.

As to the ALJ's ultimate finding that the landing site was not suitable, Palmer contends that the holding is unsupported by the record because both Palmer and Likes testified that Palmer could have landed his aircraft on the intended site. But the ALJ's ruling and the Board's affirmance on *de novo* review are supported by substantial evidence, including Palmer's own testimony that he ultimately determined the landing site was *not* suitable.

Palmer also challenges the ALJ's reliance on expert witness Speeg's testimony. Palmer contends that Speeg was institutionally biased because he derives his income from the FAA and cannot testify for any party other than the FAA pursuant to 49 C.F.R. § 9.7.[1] He also argues that the ALJ inappropriately relied on Speeg's testimony as to legal conclusions and subject matters in which he was not qualified as an expert.

We find no error in the ALJ's reliance on Speeg's testimony and the Board's subsequent affirmance. Palmer's claim that Speeg was institutionally biased and could not lawfully testify is nonsensical, as the Board noted in its order. Palmer's conclusory reliance on Section 9.7 does nothing to support his claim because the regulation permits a federal employee to testify as an expert witness on behalf of the United States. 49 C.F.R. § 9.7(b). Speeg "testified for the Administrator as an expert," J.A. 515, and thus complied with the regulation. And Palmer's accusations that the ALJ improperly relied on aspects of Speeg's testimony are wholly unsupported by the record. Palmer misleadingly quotes the ALJ by relying on portions of the hearing transcript in which the ALJ simply summarized Speeg's testimony and fails to identify any instance of the ALJ's crediting Speeg's legal

---

[1] Palmer's brief cites to 49 U.S.C. § 9.7, which does not exist. We assume he intended to cite to the Code of Federal Regulations.

conclusions or testimony on subject matters in which he was not qualified as an expert. The Board concluded that the ALJ's consideration of Speeg's expert testimony did not prejudice Palmer and so cannot constitute error, a finding that Palmer ignores.

**B.**

Additionally, Palmer argues that the FAA's complaint should have been dismissed for two reasons. We reject both arguments.

First, Palmer argues that both the ALJ and NTSB erred by not dismissing the FAA's complaint because it was deficient under the Federal Rules of Civil Procedure, which are followed in air safety proceedings "to the extent practicable." 49 C.F.R. § 821.5. Relying on the standard articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), Palmer contends that the factual allegations in the complaint failed to sufficiently inform him of his alleged misconduct because it did not allege that the low flight was not necessary for takeoff and landing. In his view, the prefatory language of Section 91.119 creates an additional element of the regulatory violation and the Administrator thus failed to state a claim by failing to allege facts supporting that element.

The FAA's complaint contains a "short and plain statement of the claim showing that the pleader is entitled to relief" as required by Federal Rule of Civil Procedure 8(a)(2). It provides the full text of the specific regulatory violations at issue and alleges that Palmer conducted a flight below the permissible altitudes, detailing the date, location and aircraft involved in the flight. The complaint easily satisfies federal pleading standards because it alleges sufficient facts to "allow[]

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678.

The complaint did not need to plead facts showing that the low flight was unnecessary for takeoff or landing because long-established precedent instructs that the prefatory language of a statute or regulation is an affirmative defense rather than an element of the violation. Section 91.119 provides that certain acts are unlawful except in specific authorized scenarios. As the Supreme Court has explained, "the default rule for interpreting provisions with this structure is that 'an exception made by a proviso or other distinct clause' designates an affirmative defense that the Government has no duty to 'negative.'" *Ruan v. United States*, 597 U.S. 450, 473 (2022) (Alito, J., concurring) (quoting *Dixon v. United States*, 548 U.S. 1, 13 (2006)). Palmer does not explain why this default rule should not apply to Section 91.119. The necessity-for-landing exception is an affirmative defense and Palmer demonstrably understood that it was his burden to prove it at the hearing because he raised necessity as a defense. We reject Palmer's claim of inadequate notice as legally unsupported and facially implausible.

Second, Palmer argues that the complaint should have been dismissed due to the FAA's mishandling of the security camera video evidence. At the hearing, the ALJ found that the FAA investigators were "negligent and careless, and at worst reckless" because the original video captured by the Penas' outdoor security camera was not properly preserved. J.A. 119. Palmer requested that the case be dismissed due to those findings; the ALJ denied his request and instead excluded the video, all testimony regarding its content and all expert testimony that relied in whole or in part on viewing the video. Palmer nevertheless contends that the ALJ erred because there are references to the video in the transcript and he was not able

to refute witness statements without the missing video evidence.

As the Board explained when it rejected this argument, its precedent instructs that "in the absence of malfeasance, dismissal of the case or an adverse inference are not appropriate to remedy missing evidence, particularly where other evidence exists." J.A. 558; *see, e.g.*, *Adm'r v. Abiraman*, NTSB Order No. EA-4978, 2002 WL 1301399, at *2 (June 4, 2002); *Adm'r v. Stricklen*, NTSB Order No. EA-3814, 1993 WL 76816, at *8 (Mar. 1, 1993). Palmer has not shown any malfeasance on the FAA's part and other evidence supports the ALJ's findings— namely, Palmer's concession that he flew at an altitude less than 100 feet. Moreover, Palmer cannot show any prejudice or other harm to his defense based on the mishandled video evidence. The ALJ properly excluded the video and disregarded all testimony relying on it. Palmer cites to portions of the transcript where witnesses discussed or referenced the video but all such testimony occurred *before* the ALJ excluded the video. And there is nothing in the record to suggest that the video would have aided in proving his affirmative defense.

## C.

Finally, Palmer argues that the Board erred when it deferred to the FAA's choice of sanctions. He points to 49 U.S.C. § 44709(d), which states that the Board "may amend, modify, or reverse the order when the Board finds . . . that safety in air commerce or air transportation and the public interest do not require affirmation of the order," *id.* § 44709(d)(1)(A), or "may modify a suspension or revocation of a certificate to imposition of a civil penalty," *id.* § 44709(d)(2). Palmer argues that this statute shows the Congress did not intend the NTSB to defer to the FAA's choice of sanction, contrary to our holding in *Pham v. National*

*Transportation Safety Board*, 33 F.4th 576 (D.C. Cir. 2022). Palmer urges us to reconsider *Pham* in light of the text of Section 44709(d) and other Circuit precedent addressing other enforcement regimes and, if we find a sanction is warranted, vacate the NTSB's sanction and remand for a determination without deference to the FAA. He is joined in making this argument by *amici curiae* Aircraft Owners and Pilots Association, Alaska Airmen's Association and Experimental Aircraft Association.

The *Pham* opinion is of course binding on us under the law-of-the-circuit doctrine. *See, e.g.*, *LaShawn A. v. Barry*, 87 F.3d 1389, 1395 (D.C. Cir. 1996) ("One three-judge panel . . . does not have the authority to overrule another three-judge panel of the court."). Palmer and *amici* nevertheless suggest that we take up the *Pham* holding en banc, even though we have already denied en banc review of the opinion. *Pham v. Nat'l Transp. Safety Bd.*, 2022 WL 1813982 (D.C. Cir. May 27, 2022).

Palmer and *amici* have not identified any legal error in the *Pham* opinion that would warrant en banc review. The *Pham* opinion was decided in reliance on Supreme Court precedent and the specific statutes establishing a split enforcement regime under which the FAA has regulatory and enforcement authority and the Board has adjudicatory authority akin to a court. *Pham*, 33 F.4th at 582-84; *see Martin v. Occupational Safety & Health Rev. Comm'n*, 499 U.S. 144, 154 (1991); *Am. Power & Light Co. v. SEC*, 329 U.S. 90, 112-13 (1946). Where the statutory scheme creates a different relationship between the enforcement and adjudicatory authorities, we have recognized that the analysis differs. For example, the Federal Mine Safety and Health Review Commission, an adjudicatory body, does not defer to the Labor Secretary's choice of sanction because the Secretary makes only a "proposed" penalty assessment

under the relevant statute; the Commission has final regulatory authority to assess all penalties.  30 U.S.C. § 815; 29 C.F.R. § 2700.30; *Am. Coal Co. v. Fed. Mine Safety & Health Rev. Comm'n*, 933 F.3d 723, 725 (D.C. Cir. 2019) (per curiam). *American Coal* and *Pham* do not conflict, as Palmer and *amici* suggest, because the agency structures at issue differ significantly.

For the foregoing reasons, we deny Palmer's petition for review.

*So ordered.*